## Richmond.

### NEALE AND AL. V. UTZ AND AL.

#### April 21.

1. Where process was served upon a defendant in an action of debt, on the day on which he was convicted of a felony, but before the conviction had taken place, and in that action a judgment by default was obtained against the defendant while he was confined in the penitentiary, the court having fairly acquired jurisdiction of the cause, the doctrine of relation does not apply so as to override and avoid the process.

2. Under such circumstances, the utmost that could have been exacted of the plaintiff was a suspension of all proceedings until the disability was removed, or the appointment of a committee to defend the suit for the convict; and although neither course was pursued, the judgment is not void, but voidable, and cannot be assailed collaterally in a court of equity, or elsewhere.

3. Where a court has fairly acquired jurisdiction of a cause and the parties, that jurisdiction continues, notwithstanding the subsequent disability of the defendant.

4. Whether a judgment be the act of the court, or be entered up by the clerk under the statute, the effect is the same; in either case it is the act of the law, and until reversed by the court which rendered it, or by a superior tribunal, it imports absolute verity, and is as effectual and binding as if pronounced upon a trial on its merits.

5. As a general rule, the law does not regard fractions of a day; but this rule is departed from in many cases where the purposes of justice require it. Courts would be very slow to decide that a man by a fiction of law is to be considered a felon before the conviction has actually taken place.

6. When a suit in equity is brought by a judgment creditor to enforce his lien against the land of his debtor, and persons claiming to be purchasers of the debtor's land complain that they were not made parties to that suit, their remedy, if they have notice of the suit, is by motion

Neale and al. v. Utz and al.

or petition to be made parties defendant thereto, and not by an independent suit to set aside the decree in the other cause, upon the principal ground that the judgment therein sought to be enforced was itself void.

In October, 1876, Wm. T. Neale and Jno. E. Warberton filed their bill in the circuit court of King William county, in which they state that on the 18th of November, 1873, Wilton S. Lipscomb was found guilty of a felony and sentenced by the court to imprisonment in the penitentiary of the State for one year. That on the same day and after said sentence, one David Utz sued out of the clerk's office of the court a writ in a common law suit in debt against the said Lipscomb, which was served after the said sentence. That on its return to the clerk's office a common order was at the first rules thereafter entered against said Lipscomb, which at the second rule day was confirmed; and on the 21st of April, 1873, after said Lipscomb was actually confined in the penitentiary, there was an office judgment entered up against him in favor of said Utz for the sum of $202.50, with interest, &c. That after the judgment Utz instituted a suit in chancery to subject the real estate of Lipscomb to the payment of his judgment, and had the summons served upon Lipscomb in the penitentiary, and there was a decree *nisi* entered against him. That the plaintiff Neale heard that a judgment had been obtained against Lipscomb, and as he had purchased from Lipscomb the wood standing on his real estate, he employed counsel to look into the matter, and at the next term of the court, the said counsel having called the attention of the court to the fact that Lipscomb was a felon *civiliter mortuus*, the court ordered the suit to be dismissed.

They further state that when Lipscomb had served his time in the penitentiary, and had returned to King William county, the plaintiff Neale purchased of him his real estate, consisting of ninety-two acres of land in the said

county, and received from him a deed for the same, dated the 16th of November, 1874; and said Neale afterwards sold to said Warberton forty-five acres of the said real estate, and conveyed it to him.

They further state that after the purchase of said land Utz instituted another suit in this court against the said Lipscomb as the sole defendant, although the deeds of the plaintiffs were on record in the clerk's office of the county court of the county, to subject the said real estate to the payment of said judgment, which being undefended by said Lipscomb, and the existence of the same being known to the complainants, the bill was taken for confessed at the last term of the court, and a decree entered directing a sale of the real estate in the bill mentioned, which is the same real estate owned by the complainants. And that the commissioner has advertised the land to be sold at, &c.

They charge that the said judgment is null and void, the said Lipscomb having been *civiliter mortuus* at the time the same was entered up, and therefore that it is not a lien on the land; and that the decree for the sale of the land having been obtained upon a suppression of the facts of the case, and without notice to the complainants, who are the owners of the land, was a fraud upon them, and should be set aside. And making Utz and the commissioner parties defendants, they pray that the sale may be enjoined; the decree set aside; that the judgment may be declared null and void, and for general relief. The injunction was granted.

Utz and the commissioner answered the bill. They deny that the writ in the common law suit was served on Lipscomb after he was sentenced to the penitentiary. They say it was served on him pending the trial for felony and before Lipscomb's conviction, and before any civil disabilities had attached to him; that the case then proceeded regularly to office judgment, which was effectual as a lien.

They say that Neale bought the land with notice of the judgment, which was docketed May 1st, 1874, before the conveyance to Neale.    That Utz did not make the plaintiffs parties because he regarded them as without title, as they bought with full notice of his judgment.    They deny that plaintiffs did not have notice of the said suit and the proceedings therein; and they say that one of the plaintiffs was a party in it and served with process, and that he had been notified by the commissioner who took the account in the case.    They deny that the bill was taken for confessed at the last term of the court, and say it was taken for confessed at the November term, 1875, and the decree for sale was made at the April term, 1876, after a decree for account and the report of the commissioner.    And they insist that the plaintiffs cannot avail themselves of a defence which Lipscomb did not make in the common law suit, and does not now, and did not in the chancery suit.

It appears that in July, 1873, Lipscomb conveyed to O. M. Winston the land in controversy to secure to Robert Neale and John E. Warberton any and all sums of money which they might expend for and on account of any expenses incurred for and in behalf of said Lipscomb, during the trial of said Lipscomb ; and Winston, Robert Neale and Warberton, as well as Lipscomb, were parties in the suit, and were served with notice by the commissioner who took the account of debts under the decree of the court.    As to the service of the writ in the action of debt by Utz against Lipscomb, it appears that it was served before the trial was ended, and probably before it was commenced, though on the same day.

The cause came on to be heard on the 7th of July, 1877, when the court dissolved the injunction and dismissed the bill, with costs; and the plaintiffs obtained an appeal.

*Geo. P. Haw*, for the appellants.

*Wm. R. Aylett* and *L. R. Page*, for the appellees.

STAPLES, J., delivered the opinion of the court.

The appellant Neale is the purchaser of a tract of land subject to the lien of the appellee's judgment. The object of the bill is to vacate that judgment upon the ground that it was recovered whilst the debtor was under confinement in the penitentiary upon a conviction of felony. The appellant admits that he purchased the land with notice of the judgment.

It may be that if, as he claims, the judgment is utterly void, he, as such a purchaser, has the right to have it so declared, and thus have removed out of his way a cloud upon the title. For it is well settled a void judgment may be assailed in any collateral proceeding. It neither binds nor bars any one, and all proceedings under it are ineffectual to confer title, or afford protection to any one. In the case before us the process upon which the judgment was founded was served upon the debtor whilst he was upon trial in a prosecution for a felony, and before his conviction. The judgment was, however, recovered by default afterwards, and whilst he was under imprisonment in the penitentiary. It is probable, although it is not certain, that the service of process took place on the same day the defendant was convicted of the felony, and it is insisted that the conviction relates back to the beginning of the day, and overrides and renders void the process. This is carrying the doctrine of relation further than is warranted by any adjudged case. As a general rule the law does not regard fractions of a day, but this rule is departed from in many cases where the purposes of justice require it. Certainly the courts would be very slow to decide that a man by a

fiction of law is to be considered a felon before his conviction has actually taken place. The suit being brought and the process served before the conviction, the court fairly acquired jurisdiction of the cause and the parties, and that jurisdiction continues notwithstanding the subsequent disability of the defendant. Under such circumstances the utmost that could have been exacted of the plaintiff was a suspension of all proceedings until the disability was removed, or the appointment of a committee to defend the suit for the convict. The plaintiff, however, did not pursue this course, but prosecuted the suit to a judgment. If it be conceded that this was error, it is not an error that invalidates the judgment. And the reason is, that jurisdiction having been once properly acquired over the person and the subject matter of controversy, no error in its exercise, no irregularity in the proceedings can make the judgment void.

The authority to decide being once shown, it can never be divested by being improperly or erroneously employed. Freeman on Judgments, § 135; *Cox* v. *Thomas' Adm'x*, 9 Gratt. 312. If, for example, a suit be commenced against a feme sole, it does not abate by her subsequent marriage, but it may proceed against husband and wife jointly. If the plaintiffs, however, without noticing the marriage, take judgment against the feme, the judgment is not thereby rendered void, but is regarded as valid and binding until and unless reversed by some direct proceeding in that court. In a number of cases this doctrine has been carried to the extent of holding that when process is served in the lifetime of the defendant and he afterwards dies, a judgment against him subsequent to his death is not absolutely void, but simply voidable. The court having obtained jurisdiction over the defendant whilst living, is thereby empowered to proceed with the case to judgment; and although the court ought to cease to exercise jurisdiction over a party

when he dies, its failure to do so is an error to be corrected on appeal, or writ of error *coram nobis*, as the case may be. Freeman, § 40, 153. Whether this reasoning be or be not correct to the extent claimed, it shows how far the doctrine is carried, that where the court has obtained cognizance of the cause, advantage cannot be taken collaterally of its judgments, however erroneous they may be. It has been decided in England if the court of common pleas holds plea in debt without original it is not void, for they are judges of those pleas, and it cannot be said the proceeding is *coram non judice*.

The case of *Prigg* v. *Adams*, 2 Salk. R. 674, is a very strong illustration of this doctrine. An act of parliament creating a court in Bristol, declared that if any person brought an action in any court at Westminster, and it appeared in the trial to be under 40 shillings, no judgment should be entered therein, and if entered it should be void; and yet a judgment of the court of common pleas upon a verdict of five shillings, upon a cause of action arising in Bristol, was held merely voidable and not void. *Peters* v. *League*, 43 Maryd. R. 58.

The same rule more strictly applies where the defendant relies upon a mere privilege as exempting him from the process and jurisdiction of the court. It has been almost universally held he must plead his privilege, otherwise he will be considered as having waived it. It was so decided by the general court in *Prentis* v. *Commonwealth*, 5 Rand. 697. It was there said the judicial history of this question did not furnish an example of the allowance of the privilege, but upon plea filed, or upon motion tendered, or made at the period proper for the consideration thereof by the court whose proceedings are sought to be abolished or suspended.

In *Turnbull* v. *Thompson*, 27 Gratt. 306, the defendant having been sued and judgment recovered against him whilst he was in the military service of the Confederate

States, it was held by this court that the court in which the action was brought could not know, unless the matter is brought to its attention, that the defendant is in such service, or that he may not prefer to waive his exemption. If he is so situated he cannot plead the exemption, he ought to do so within a reasonable time after his disability is removed. What is there said, is applicable to the case of a convict in the penitentiary against whom judgment is recovered as in the present case, after his conviction. He may know that the judgment is just, and may be willing to submit to the recovery. If he is not, it is incumbent upon him in proper time to take such steps, by motion or other proper proceedings, as may be necessary to review the judgment in question. Any other rule would inevitably lead to great inconvenience and mischief.

As was said by Judge Christian in delivering the opinion of this court in *Lancaster* v. *Wilson*, 27 Gratt. 627, " A judgment, though unreversed and irreversible, could no longer be a final adjudication of the rights of the parties, but a starting point from which new litigation would spring up ; acts of limitation would become useless and nugatory, and purchasers upon the faith of judicial process would find no protection ; any right established by a judgment would be insecure and uncertain, and a cloud rest upon every title."

In the case before us the judgment against Lipscomb was recovered in April, 1874. His term of imprisonment in the penitentiary expired in November, 1874. It does not appear that he is dissatisfied with the judgment, or that he has ever made an effort to reverse or assail it. It was not till October, 1876, that the appellants filed their bill in equity, asking that it might be declared void upon the grounds already mentioned.

The principles which uphold the jurisdiction of the courts in all this class of cases is not at all affected by the

fact that the judgment is by default. For whether the judgment be the act of the court, or be entered up by the clerk under the statute, the effect is the same. In either case it is the act of the law, and until reversed by the court which rendered it or by a superior tribunal, it imports absolute verity, and is as effectual and binding as if pronounced upon a trial upon the merits. Freeman, §§ 330–1, 487–541.

For the reasons already stated, we are of opinion that their claim cannot be sustained, that the judgment cannot be collaterally assailed in a court of equity or elsewhere. Whether Lipscomb, the debtor, might by a proceeding in the court in which the judgment was recovered demand its reversal without having some valid defense on the merits, is a question we are not called upon to decide. Nor have we felt it necessary to express any opinion upon the construction of the various statutes cited by counsel relating to the appointment of committees for penitentiary convicts. *Ruffin's Case,* 21 Gratt. 790, has been cited by appellants' counsel. The most cursory examination of the case will show that there is nothing in the decision itself, or in the reasoning of the judge who delivered the opinion, in conflict with the views here expressed.

Another objection assigned in the petition for an appeal is that the appellant William T. Neale, to whom the land was conveyed by Lipscomb, was not made a party to the suit brought by Utz against Lipscomb to subject the land to the lien of the judgment. If this objection be tenable it is not available in this case. The appellant's remedy, if any he had, was by motion, or petition, to be made a party defendant in the suit of Utz v. Lipscomb, in which the decree for the sale of the land was rendered. Both the appellants were apprized of the existence of that suit before the decree of sale, for they were served with notice of the taking of the account by the commissioner. They were

certainly apprized of it when their bill was filed in this case, and it was as easy to have presented their petition in that suit as to bring the present suit.

It was clearly not competent for the appellants to file an independent bill and ask the court to set aside a decree in another cause upon the ground that the appellants ought to have been made parties before the decree was entered in that cause. It has been suggested here that the present bill might, under the liberal practice pursued in this State, be treated as a petition, and proceeded with as such, in the case of Utz v. Lipscomb. It does not appear that the appellants asked it in the court below, nor have they suggested it in the petition for an appeal. The gravamen of their bill is that the judgment against Lipscomb is void, because he was at the time a penitentiary convict, and they, as purchasers of the land, are entitled to have it vacated. No specific complaint is made that the appellant Neale was not made a party, nor is there any prayer that he should be, or that anything should be done in that suit to protect his interests. It is an independent bill, framed with a view to vacate the appellee's judgment and decree of sale entered in another cause, and cannot be considered a petition in that cause without a violation of every rule of practice and pleading. But if we are so to consider it, it appears that one of the appellees was made a party defendant to the bill of Utz v. Lipscomb, and made no defence. Indeed, the appellants do not at all controvert the justice of the debt, or the validity of the judgment except upon the single ground already considered. That judgment was duly docketed, and whether it was or not, they had notice of it at the time of the purchase, and are therefore bound by it. The appellant Neale, it seems, has a judgment also against Lipscomb which was duly reported and

allowed in the suit of Utz v. Lipscomb, so that there is not even a possibility of injustice being done him.

Winston, the trustee, in whom the legal title to the land is vested, was made a party, and there is no difficulty arising from that source.

In every view that may be taken, the decree of the circuit court is manifestly right, and must be affirmed.

DECREE AFFIRMED.