## BAINES, Administrator *v.* CLARKE & Another.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF WEST. VIRGINIA.

Argued April 25th, 1884.—Decided May 5th, 1884.

*Contract—Interest.*

A conveyed to B a large quantity of land for $5 an acre, to be paid in instalments with legal interest on deferred payments from June 3d, 1873. Suits were pending as to some of the lands, and it was agreed that if recovery should be had against A as in any of the suits, the land so recovered should not form part of the land sold, and the last instalment of $50,000 was agreed to be reserved until decision of the suits and ascertainment of quantity.

*Held,* (1) That A was entitled to interest according to the agreement on deferred payments as to all lands of which he was in possession whether in suit or not ; (2) that as to all lands held adversely he was entitled to interest from the entry of judgment in his favor in the ejectment suits; (3) as to lands within the bounds of the description, the title to which was acquired by him after its date, to interest only from the date of the acquisition of the title ; (4) and as to the last instalment of the deferred payments, to interest from June 3d, 1873.

The facts are stated in the opinion of the court.

*Mr. Caleb Boggess* and *Mr. S. A. Miller* for appellant.

*Mr. William Pinkney Whyte* for appellees.

Mr. Chief Justice Waite delivered the opinion of the court.

On the 2d of February, 1874, John D. Lewis conveyed to George W. Norris and Henry Clarke three certain tracts of land embraced within the exterior boundaries of a survey of 40,000 acres granted by the Commonwealth of Virginia to Jacob Skyles on the 11th of July, 1798. The instrument by which the conveyance was made was signed by both parties, and contained not only a grant of the land, but an agreement on the part of the grantees for the payment of the purchase-money. That agreement was as follows:

" The consideration of this deed is five dollars per acre as aforesaid, to be paid as follows : $50,000 in cash, the receipt whereof is hereby acknowledged ; $25,000 to be paid on the 1st day of October, 1874 ; $25,000 on the 1st day of April, 1875 ; $50,000 on the 1st day of January, 1876 ; and $50,000, or whatever may be the balance due, on the 1st day of January, 1877, with legal interest on all the deferred payments from the 3d day of June, 1873, said interest to be paid semi-annually, commencing on the 1st day of July, 1874. And it is further understood and agreed by the parties to this deed that an accurate survey of the lands hereby granted shall be made under the direction and superintendence of S. A. Miller, of Charleston, to ascertain the true quantity of lands intended to be granted, such survey to be made by running the exterior lines embracing the said three lots made by Surveyor and

Commissioner Thomas S. A. Matthews previous to the sale, and now of record in the proceedings aforementioned, and as described and set forth in this deed, and in the deed from James M. Laidly, survey commissioner of himself and said Matthews, under the decrees and orders in said proceedings for the sale of Jacob Skyles's survey of 40,000. And, as it is further known that there are sundry suits pending in the Circuit Court of Kanawha County between the said John D. Lewis, as defendant, and Hale and McMullin, George Belcher, W. A. McMullin, J. L. McMullin, and George W. Morrison, as plaintiffs, all of which are now submitted to arbitration by an order of said Circuit Court; it is further agreed that any recovery of any land within the boundaries aforesaid shall be and constitute no part of the lands herein sold and granted, but be deducted therefrom at the said rate of five dollars per acre, the said John D. Lewis agreeing to use all diligence in the prosecution of said suits, so as to obtain a speedy trial; . . . it is further understood and agreed that the last payment, or balance of $50,000, due 1st January, 1877, and interest, is reserved until the decision of said suits and the ascertainment of quantity; and the said John D. Lewis hereby reserves a claim upon the land hereby granted for the payment of the purchase-money, and the interest thereon of all the deferred instalments as hereinbefore provided."

The cash instalment of $50,000 was paid, as was also the instalment of $25,000 due on the 1st of October, 1874. Default having been made in the payment of the amount falling due on the 1st of April, 1875, and the interest maturing July 1st, 1875, Lewis filed this bill in the Circuit Court of Kanawha County, West Virginia, on the 17th of August, 1875, to enforce his vendor's lien.

The survey made pursuant to the agreement showed that there were within the exterior boundaries of the tracts conveyed 39,000 acres, but it is not claimed that payment is to be made for more than 36,244 acres, the title having failed to all the rest.

The suits pending at the time the sale was made involved the title to 19,716 acres, but of this amount only 165 acres were in

the actual possession of any one adversely to Lewis. On the 24th of November, 1874, the reference which had been made of the suits to arbitration, mentioned in the agreement, was set aside by order of the court, on account of the failure of the arbitrators to act. At the June term, 1875, of the court a special jury was summoned for the trial of the causes on the 22d of the month, but, before that day arrived, the court adjourned for the term. In January, 1876, one of the suits was tried, but the jury failing to agree, the suits were all continued. On the 30th May, 1876, another agreement for submission to arbitration was entered into, and on the 24th August, 1876, an award was filed, but for some reason it was not confirmed by the court until December, 1877, when judgments were entered in accordance with its requirements. On the 23d of January, 1880, the several plaintiffs in the ejectment suits applied to the Court of Appeals of West Virginia for the allowance of writs of error to review these judgments, but the applications were all refused on that day.

There is in the record evidence of the recovery of a judgment, in the District Court of the United States for the District of West Virginia, by Colos P. Huntington, on the 13th of October, 1875, against John Lewis Taylor, for the recovery of the possession of four hundred acres of land. The judgment was recovered by default, and it does not appear when the suit was begun, or by what right Taylor was in possession. At the next term of the court, Clarke & Norris appeared and asked that the verdict and judgment be set aside, and a new trial ordered. They alleged that the judgment might affect their rights, and that they had no notice of the suit. This motion was taken under advisement by the court, but there is no evidence showing what disposition has been made of it. The court below deducted this recovery from the land to be paid for, and rendered a decree upon the following basis:

Land to be paid for................35,575 acres.
In litigation at the time of the sale......19,716 acres.

As to the lands not in dispute, the decree was for the contract price per acre, with interest from June 3d, 1873, to

March 2d, 1881, deducting payments as they had been made. As to the lands in dispute, it was for the agreed price, and interest from January 23d, 1880, the date of the refusal of the Court of Appeals to allow the writs of error, until March 2d, 1881.

The difference between the 36,244 acres claimed by the appellant, and 35,775 allowed by the court, or 469 acres, arises from the failure of the court to correct a former allowance of 200 acres for one of the parcels to which the title had failed, when by actual survey since that time it has been found to contain only 131 acres—a difference of 69 acres—and the deduction of the Huntington recovery of 400 acres from the amount to be paid for.

The questions presented here are:

1. As to the error of 69 acres;

2. As to the deduction of 400 acres recovered by Huntington; and

3. As to the time from which interest shall be charged on the price of the lands in dispute when the sale was made.

As to the 69 acres, we think the claim of the appellant, the representative of Lewis, is right. The report of the master shows the facts, and it is evident that in the original interlocutory decree the amount was fixed by the deduction of an estimated quantity contained in one of the disputed tracts, and not by an actual survey. The survey having since been made and the true quantity ascertained, the decree ought to be made to conform to the actual facts.

As to the Huntington recovery of 400 acres, the testimony is so meagre and indefinite that we are not inclined to disturb the decree below. There has been a judgment for the recovery of the possession, and it was obtained at a time when Lewis was in litigation about his titles. No notice of the suit was ever served on Clarke & Norris. It does not appear that Taylor was in possession through them, and, under the circumstances of the case, Lewis was as much bound to defend as they were.

As to the interest, we think the court was in error. The master has found, and about this there is no dispute, that Lewis

was in actual possession of 34,267 acres. By this we suppose is meant that to this extent the tract was not actually held adversely to Lewis by any one. Clearly, therefore, Clarke & Norris could enter at any time. The principal pending litigation was against Lewis to get him out of possession, not by him to get into possession. Of the remaining 1,977 acres, Lewis had no title to 1,412 acres, and he was actually out of possession of 165. The Huntington 400 acres made up the rest. As to the price of the acres to which Lewis had title, and of which he was in possession, actual or constructive, we think he is entitled to interest on all deferred payments from June 3d, 1873. As to all acres to be paid for which were held adversely, interest should be charged from the time of the judgments in the ejectment suits upon the award of the arbitrators, which was December 20th, 1877. As to the lands to which title was acquired after the conveyance, interest should only be calculated from the date of the acquisition of title. No interest should be calculated on the cash payment of $50,000 at the time of the conveyance. This seems to us to be in accordance with the true construction of the contract of purchase as it was reduced to writing by the parties. We can take notice of no understandings prior to the writing as to what the contract was to be. The conveyance was of all the lands inside the exterior lines of the tracts to which Lewis had title, and for these five dollars per acre was to be paid, with interest from June 3d, 1873, on the deferred payments. This language is plain and unambiguous. The fact of adverse claims to portions of the property was understood by all, and this condition of things was specially provided for in the agreement of purchase. The payments were to be at the rate of five dollars per acre for all the land the title to which was eventually secured. Lewis was to use due diligence in the prosecution of the suits so as to obtain a speedy trial. We find nothing in the record to show that he was at fault in this particular. As the original arbitrators failed to perform their duties, that submission was set aside. A trial to a jury was then had without any practical result, when a new submission was agreed on, and an award promptly obtained. There was some delay in securing final

judgments upon this award, but we see no evidence of such neglect on the part of Lewis in this particular as amounts to a breach of his contract. He certainly could not control the conduct of his adversaries in their applications for the allowance of writs of error, and, therefore, is not chargeable with damages for the delay in that particular. He secured his judgments, and the Court of Appeals has refused to disturb them.

We come now to consider the effect of the last clause in the agreement, which is in these words: " It is further understood and agreed that the last payment or balance of $50,000, due January 1st, 1877, and interest, is reserved until the decision of said suits, and the ascertainment of quantity." This shows that the parties were of opinion that the lands when surveyed, and all the suits decided, would not fall more than 10,000 acres short of the estimated quantity. It also shows that it was anticipated the suits might not all be decided until after January 1st, 1877, the date of the maturity of the last instalment, because the payment of that instalment, whatever should be its amount, was postponed until the quantity was ascertained and the suits decided. The only provision as to delay in securing title was that the suits should be prosecuted with diligence, and that the last instalment was not to be demanded until the events had happened which were to settle finally its amount. When paid, however, the last instalment was to carry interest from the 3d of June, 1873, like all the rest. If it had appeared that Lewis delayed unreasonably the prosecution of the suits, or the ascertainment of the quantity, we might have stopped the interest as compensation for his neglect in such particulars; but the only delay in the prosecution of the suits which could by any possibility be made the cause of complaint was that between the filing of the awards and the judgments thereon. On full consideration, however, we are of opinion that Lewis ought not be made responsible for this. By a failure to serve the necessary notices, the judgments were delayed one term of the court. This appears to have been by accident rather than design, and it was long after Clarke & Norris were in default for a failure to perform their agreement.

In our opinion the decree should have been in favor of the

appellant in accordance with the statement of account made by the master numbered 22, save only that no interest should be charged on $50,000 of the purchase-money represented by what was accepted as the cash payment. By the express terms of the agreement interest was only to be paid on the deferred instalments.

*The decree is reversed as to the amount found due, and affirmed in all other respects, and the cause is remanded, with instructions to modify the decree as originally entered by inserting the amount ascertained to be due on the principle of accounting as indicated in this opinion, and for further proceedings according to law.*