DICKINSON et al. v. HUNTINGTON et al.

(Circuit Court of Appeals, Fourth Circuit. February 24, 1911.)

No. 872.

1. ACTION (§ 71*)—COURTS—JURISDICTION—PROCEEDINGS AFTER FINAL JUDGMENT.

Where an action in ejectment has been terminated by a verdict and judgment awarding a writ of possession, which has become final, the powers of the court therein are at an end, and it has no jurisdiction to thereafter adjudicate upon the independent rights of persons not parties

simply at the instance of the marshal or other officer charged with the execution of the judgment, seeking instructions from the court as to how he shall perform his ministerial duties, even though such persons appear and submit their contentions.

[Ed. Note.—For other cases, see Action, Cent. Dig. § 756; Dec. Dig. § 71.*]

2. EJECTMENT (§ 120*)—EXECUTION OF JUDGMENT—DUTY OF OFFICER.

The duty of a marshal or other officer in executing a writ of possession issued on a judgment in ejectment is purely ministerial, to deliver possession of the land pointed out to him by the plaintiff, and he has no right of appeal to the court for instructions because of protests or notice served on him by persons, not parties to the action, who claim independent rights in the land.

[Ed. Note.—For other cases, see Ejectment, Dec. Dig. § 120.*]

3. PROCESS (§§ 137, 156*)—RETURN—REQUISITES OF AFFIDAVIT OF SERVICE.

Under the law of West Virginia, the failure of a notary public, before whom an affidavit is made of the service of process in ejectment, to be used within the state, to affix his seal to the jurat, does not invalidate the process; and in any event it cannot be attacked, unless by timely motion to quash the return.

[Ed. Note.—For other cases, see Process, Cent. Dig. §§ 177–180, 211; Dec. Dig. §§ 137, 156.*]

4. EJECTMENT (§ 122*)—EXECUTION OF JUDGMENT—RESTITUTION.

Where a court has placed a plaintiff in possession of land under a writ of possession issued on a judgment in ejectment, which has become final, it has no power to undo such action by directing a restitution of the property to the persons from whom possession was taken.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 419–430; Dec. Dig. § 122.*]

In Error to the Circuit Court of the United States for the Southern District of West Virginia, at Charleston.

Action at law by E. H. Huntington and Arabella Huntington, heirs and devisees of Collis P. Huntington, deceased, against John Lewis Taylor and others. From an order of the Circuit Court (156 Fed. 700), John Quincy Dickinson and others bring error. Affirmed.

James F. Brown (Brown, Jackson & Knight, and Mollohan, McClintic & Mathews, on the brief), for plaintiffs in error.

F. B. Enslow, for defendants in error.

Before GOFF and PRITCHARD, Circuit Judges, and WADDILL, District Judge.

WADDILL, District Judge. This is a writ of error to two certain orders and judgments, entered by the court below on the 28th day of March, 1908, and the 1st day of June, 1908, respectively, in the above-entitled case, an action of ejectment pending in said court, instituted by the late Collis P. Huntington, in his lifetime, against John Lewis Taylor and others, to recover possession of a tract of land in Kanawha county, W. Va., described in the declaration by metes and bounds, and containing 7,697 acres, as ascertained by the verdict of the jury therein. The particular portion of land as to which the controversy exists is a triangle shown upon the plats and surveys thereof set up in the pleadings, containing some 400 acres, and is caused apparently

by an overlap of two original grants under which the parties respectively claim to have acquired title in whole or in part; the one known as the "John Steele grant," of 19,500 acres, and the other as the "Jacob Skiles grant," of 40,000 acres. The decision of the lower court, reported in 156 Fed. 700, contains a detailed description of the premises in controversy, showing the overlap between the two grants aforesaid, and the fact that the 400 acres in question was included in the finding of the jury in favor of plaintiff in ejectment, as also a statement of the pleadings and proceedings in the case, to all of which reference is especially made to avoid repetition of the same here.

Briefly stated, the record shows that upon the filing of the declaration at rules in the clerk's office on the first Monday in July, 1875, pursuant to the provisions of the state statute, with proof of service thereof, the July and August rules were duly taken thereon, and that at the October term of court following, the case being then docketed for hearing, an order was entered dismissing the suit as to all the defendants except John Lewis Taylor, and an office judgment as against him, as tenant of the freehold, was duly confirmed, and a jury impaneled, which returned a verdict in favor of the plaintiff for the land described in the declaration and verdict. Judgment was entered on the verdict on the 13th day of October, 1875, the day of its rendition, and a writ of possession awarded to the plaintiff. At the next term of court, the 3d day of May, 1876, Henry Clark and G. W. Norris, who had purchased part of the Skiles grant from John D. Lewis, whose tenant the said Taylor was, appeared and moved the court to set aside the verdict and judgment entered at the then last term of court against John Lewis Taylor, and to grant a new trial therein, upon the ground that:

"Said judgment will, or may affect their rights, and the same was obtained by surprise and fraud, for the reasons apparent upon the face of the papers of record; the said Henry Clark and George W. Norris claiming and already being owners in fee of the lands, or a large portion thereof, and actually in possession of the same, and having no notice of the said suit."

This motion the court took time to consider. The Clark and Norris who thus appeared had theretofore acquired the lands covered by the Skiles patent from John D. Lewis, and failing to pay in full the purchase price for the property, in an equity suit instituted by Lewis to enforce payment of the unpaid purchase money, they were relieved from payment for the 400-acre piece of land in controversy, because of the judgment herein in favor of Huntington. Baines v. Clark, 111 U. S. 789, 4 Sup. Ct. 671, 28 L. Ed. 599. In said equity cause, Clark and Norris and J. Wilcox Brown, trustee, to whom the land had been conveyed, were directed to release that portion of the property to the heirs of said John D. Lewis, and, on their failure to do so, the court authorized its commissioner, D. C. Gallagher, to make such release, which was done; the plaintiffs in error, the Dickinsons, being of the heirs of said Lewis, and the parties to whom the land in controversy was allotted in the partition of his estate.

On the 17th day of May, 1895, more than 19 years after the entry of the last order, the court, on motion of the plaintiff, after first reciting that the case, as well as the motion therein made on the 3d day

of May, 1876, by Clark and Norris, to set aside the verdict and judgment entered thereon, and which the court had taken time to consider, was then triable, by operation of law, in the United States Circuit Court, instead of in the District Court, ordered said case to be docketed therein; and said Huntington thereupon filed his answer to the rule awarded against him to show cause why the verdict so entered in the District Court should not be set aside, and moved the Circuit Court to dismiss the rule and award him a writ of possession for the land claimed by him, of which he had been adjudged owner by the verdict of the jury, and the court's judgment of approval thereof, and also filed his affidavit in support of the motion.

On the 29th day of May, 1896, one year later, the case came on to be heard again in the Circuit Court, when the following order was entered:

"This day came the plaintiff, C. P. Huntington, by his attorneys, and the court, having maturely considered all the questions raised upon the motions of Henry Clark and G. W. Norris to set aside the verdict, and on the answer of C. P. Huntington, and upon said C. P. Huntington's motion to vacate said rule and award him a writ of possession for the land claimed for the plaintiff, is of the opinion that said motion for a rule came too late, and was therefore improvidently awarded, and is dismissed without prejudicing any rights, if any they have, in any other proceeding, and that the plaintiff is entitled to a writ of possession of and for said land. It is therefore ordered that the said rule against said C. P. Huntington on the motion of said Clark and G. W. Norris be and the same is discharged without prejudice as aforesaid, and that a writ of possession do issue in favor of the plaintiff against the defendant John Lewis Taylor for the land as set out in the verdict and the judgment thereon rendered in the District Court of the United States for the District of West Virginia, on the 13th day of October, 1875, and now in this court remaining. And the clerk is directed to issue said writ directing the marshal of the district of West Virginia to deliver possession of the said tracts of land to the said C. P. Huntington."

On the 4th day of January, 1897, an order was entered reciting that the parties came by their attorneys, and the marshal, to whom the writ of possession was delivered for execution, reported to the court that he had been served with notice from John D. Dickinson, and Mary D. Dickinson, stating that John Lewis Taylor was dead, and that they claimed to hold the land under title other than that under which said John Lewis Taylor held the same, and could not be dispossessed under this writ, and the marshal thereupon asked the court for instructions as to his duty under said writ, and the execution thereof; and plaintiff moved the court to direct the marshal to execute the writ according to its mandate, and offered to prove that John Lewis Taylor was alive, and that the present tenant on the land occupied the same house that Taylor occupied, and claimed to be the tenant of the same landlord Taylor was tenant of, and a continuance was had until the next day. No order was entered on the next day, but on the 9th day of January, 1897, five days later, one was entered, reciting the appearance of the plaintiff and of said John Q. Dickinson and Mary D. Dickinson, who served the notice on the marshal, referred to in the previous order, and also H. M. White, the tenant mentioned in said notice, by counsel. And thereupon the plaintiff again moved the court to instruct the marshal to dispossess the said White, under

the writ sued out herein, of the premises then occupied by him, and to deliver possession of the same to the plaintiff, to the granting of which motion the Dickinsons objected, and on their motion leave was given them to state the grounds of their objection until the 10th day of the next regular term of the court.

No further order seems to have been entered until the 29th day of May, 1902, more than five years thereafter, when on that day, the parties aforesaid appeared by their counsel respectively, and the plaintiff moved to transfer the case to the Northern district of West Virginia, which was overruled. And thereupon the death of C. P. Huntington was suggested, and a scire facias awarded against the defendants, requiring them to appear on the first day of the next term and show cause why the proceedings should not be revived in the name of his devisees. On the 10th day of December, 1902, the case was on motion of E. H. Huntington and Arabella Huntington, without scire facias, revived in their names as parties plaintiff. No further steps appear to have been taken in the cause again for more than five years, when, on the 28th day of March, 1908, the following order, later appealed from, was entered.

"Upon application of the marshal, and intervention of John Q. Dickinson and others, to show cause why the writ of possession issued in this cause should not be executed, this day came the parties, by their attorneys, and the court having fully considered the questions raised herein and the argument of counsel, for the reasons stated in the opinion in writing filed on the ———— day of November, 1907, and now made a part of the record, this court has no jurisdiction to decide or pass upon the questions raised herein at this time, or to direct the marshal as to how the writ of possession heretofore issued herein should be executed. It is therefore ordered that the marshal holding the writ of possession do execute the same according to the terms thereof and make return thereof as in said writ directed. And it being suggested to the court that the original writ of possession issued herein has been mislaid by the marshal, and no return thereof made pending the decision of the court in this matter, the clerk of the Circuit Court of the United States for the Southern District of West Virginia, sitting at Charleston, is directed to issue an alias writ in room and place of the said original writ issued herein on the ———— day of ————, making the same returnable within 60 days from this date, the issuing of said writ *and in this matter* to be without prejudice to the rights of any of the parties hereto, leaving them in the same condition as they were at the time said marshal applied under the original writ of possession for instructions as to his duties thereunder."

On the 1st day of June, 1908, the defendants John Q. and Mary D. Dickinson moved the court, in writing, to set aside its findings and judgment rendered on the 9th day of January, 1907, entered upon the records on the 28th day of March, 1908, and to grant a new hearing, and further to instruct the marshal as set out in their written motion that day filed, which the court overruled, and the defendants thereupon excepted to the ruling, proceedings, and action of the court in denying said motion, and its action in refusing each and every request and part thereof, as set forth in said written motion, and tendered their bills of exception.

To the action of the court in entering the last two orders, the said John Q. and Mary D. Dickinson and M. H. White sued out a writ of error, presenting for the consideration of this court the correctness of the action of the lower court (1) in its refusal to direct said mar-

shal that said writ could not be executed as to these defendants, not parties or privies to said judgment; (2) in refusing to interpret the writ of possession in said motion involved, and to define by adequate boundaries the lands possession of which he was directed to deliver; (3) in refusing to quash said writ of possession, first, because of the death of the defendant Taylor and failure of the plaintiffs to revive the judgment, and, second, because said judgment was void for want of service of process upon the defendant Taylor; (4) in entering judgment in a proceeding that was void, because no proof of service of process was ever properly made, the notary before whom the affidavit to the return was made having failed to affix his notarial seal to the jurat; and (5) because of the refusal to grant the motion to order a restitution of the premises in question to the plaintiffs in error.

A preliminary question has been presented by the defendants in error, namely, that the writ of error should be dismissed, because not sued out within the statutory period of six months from the date of the entry of the judgment complained of; the contention being that the action of the lower court, sought to be reversed, was had on the 9th day of November, 1907, instead of on the 28th day of March, 1908, when the order seems to have been formally spread upon the order book, and hence was more than six months prior to the date when the writ of error was sued out, viz., on the 17th day of September, 1908. The record, as respects this motion, is not entirely clear; but, after giving much consideration thereto, we have reached the conclusion that the proper date of the entry of the judgment complained of was the 28th day of March, 1908, and not the 9th day of November, 1907, and hence that the motion should be overruled. It is true that the opinion and judgment of the court seems to have been announced and placed in the clerk's office on the 9th day of November, 1907; but it was not formally entered until the 28th day of March, 1908. This is evidently what was intended, and the court should be slow to adopt the contrary view, as it would cut off the right of the parties affected to be heard in this court.

Considering the assignments of error, thus briefly stated, in the order named, the first three relate to the action of the lower court in its refusal to instruct the marshal, and interpret the writ, as asked for, for lack of jurisdiction so to do, and because of the entry of the order of the 29th day of May, 1896, awarding the writ of possession, the death of John Lewis Taylor having been suggested, and no scire facias awarded to properly revive the cause.

The lower court, in an elaborate opinion (156 Fed. 700), passed upon the questions covered by these three assignments, finding as matter of fact that John Lewis Taylor was living at the time mentioned, and that it was without jurisdiction, upon the then state of the record, to either instruct the marshal how to execute said writ or interpret the same. We concur with the lower court in its findings of fact as to John Lewis Taylor being alive, as well at the entry of the original judgment as at the date of the dismissal of the rule to show cause against the setting aside of the same entered on the 26th of May, 1896, and are in full accord, for the reasons therein stated, with the views, expressed in the opinion, that said court was without jurisdic-

tion, power, or authority to pass upon the other two questions presented.

As respects both the entry of the original judgment on the 13th of October, 1875, by default, on the verdict of the jury, and the award of the writ of possession thereunder, and the subsequent dismissal of the rule, awarded on the motion to set aside the verdict and judgment, and the awarding of the writ of possession for the said premises, entered on the 29th day of May, 1896, the terms of court at which both judgments and orders were entered had ended and expired before any further action was taken by any one, and no exception, appeal, or other objection was made or had and entered during either of said terms, and the right so to do, so far as this proceding is concerned, was thereby forever lost and barred, and manifestly relief could not be afforded one injuriously affected under these conditions, either by the officer whose duty it was to execute the court's process, seeking instructions from the court as to his duty in so doing, or the parties thus affected asking an interpretation of the process. The law fixed what was the meaning and effect of the action taken, and, as above stated, was final and conclusive in this case, certainly as to the parties thereto, or their privies. Grignon v. Astor, 2 How. 313, 11 L. Ed. 283; Hickman v. Ft. Scott, 141 U. S. 415, 418, 12 Sup. Ct. 9, 35 L. Ed. 775; Last Chance Mining Co. v. Tyler, 157 U. S. 684, 691, 15 Sup. Ct. 733, 39 L. Ed. 859; Kingman v. Western Manufacturing Co., 170 U. S. 675, 680, 18 Sup. Ct. 786, 42 L. Ed. 1192; Terry, Assignee, v. Dickinson et al., 75 Va. 475; Neale et al. v. Utz et al., 75 Va. 480, 488; Freeman on Judgments, §§ 135, 153, 330, 331, 487.

The fourth assignment of error presents for the consideration of the court the question of whether or not the entire proceedings in the lower court are not void because of the failure of the notary, before whom the affidavit was made of the service of process, to affix his seal to his jurat. This assignment, in our judgment, is not well taken. This was the institution of a common-law suit, in which this court follows the pleading and practice of the state in which the suit is instituted, and under the law of West Virginia an action of ejectment was commenced by service of a copy of the declaration by the plaintiff on the defendant, with a rule to plead attached thereto, returnable at rules, or at a term of court on a day mentioned, and such declaration and rule to plead could be served by an individual as well as an officer, such individual, however, to make affidavit of the due service thereof upon the defendant. This seems to have been regularly done in this case before a notary public of Kanawha county, W. Va., the county in which the land lay. The paper certified to by the notary was not to be used beyond the limits of the state, but in the federal court in West Virginia having jurisdiction within the county in which the land lay, and of which county the notary public was an official; and under the state law he was not required, as to such paper, to attach his seal to any certificate he might make, and his failure so to do would in no respect invalidate the return; and, if subject to exception at all, it should have been raised by motion to quash the return, timely and appropriately made in the trial court, and certainly

came too late when interposed in this case. Sections 2193 and 2195, West Virginia Code Annotated 1906.

Coming, now, to the fifth assignment, namely, the failure of the court to direct a restitution of the property to the plaintiffs in error, we are clearly of opinion that no error was committed in this respect. No general discussion need be entered into as to when and when not restitution may be made in an ejectment case; but generally it may be said this form of equitable relief may sometimes be granted, in cases, for instance, where from some cause the proceedings in which the possession was awarded failed, either from inherent defects in the same or error committed therein. In this case, however, in the view taken by this and the lower court, an order of restitution of the premises would have been erroneous. It would have been to do indirectly what the court had directly refused to do. If the court was without jurisdiction and authority to interpret the writ, or instruct the marshal as to the manner of its execution, in placing the defendant in possession of the property, it would clearly seem to be improper to order restitution of such premises, and thereby undo what was done under the writ. Warville on Ejectment, §§ 520 to 524; 15 Cyc. 196; Heileman v. Frey, 54 N. J. Law, 284, 23 Atl. 943; Perry v. Tupper, 70 N. C. 538.

The conclusion reached is without prejudice to the right of the plaintiffs in error to take such appropriate action as they may be advised to, looking to the recovery of the interests they have, if any, in the property in controversy, and we do not mean to express any opinion regarding such future litigation, or any question that may arise therein. The action of the lower court will in all respects be affirmed, at the cost of the plaintiffs in error.

Affirmed.