# CHARLESTON

STEWART *v.* BALLOT COMMISSIONERS.

Submitted October 31, 1912.   Decided November 12, 1912.

1. ELECTION—*Certificate of Nomination—Emblem of Political Party.*

    Though a certificate of voters nominating a candidate for public office does not contain the device or emblem of the political party to which it relates, yet if it does contain the name of the party on whose ticket it is meant to be printed, it is not void, but valid. It is sufficient if the requirement of the emblem is safely and substantially otherwise complied with. (p. 247).

2. SAME—*Certificate of Nomination—Priority.*

    Where there are two competing certificates of voters nominating different persons as candidates for the same public office, that which is signed by the requisite voters and first filed with the clerk of the circuit court takes precedence. (p. 247).

3. SAME—*Certificate of Nomination—Approval of Party Committee.*

    The county or other committee of a party not participating in the last election has no recognition in law, and no power to approve or disapprove or direct the preparation by voters of a certificate nominating a candidate to be voted for at an election. (p. 248).

Petition by E. D. Stewart for a writ of *mandamus* to John L. Kinghorn and others.

*Writ Denied.*

*Chas. McCamic* and *J. B. Sommerville,* for petitioner.

*Buckner Clay, Henry A. Nolte, Robert S. Judge* and *John Marshall,* for respondents.

BRANNON, PRESIDENT:

E. D. Stewart seeks from this Court a writ of *mandamus* to compel the ballot commissioners of Ohio county to strike from the column or ticket of the Progressive Party on the ballot sheet to be used in the election on the 5th day of November, 1912, the name of Oliver S. Marshall, as a candidate for the State Senate, and to place the name of Stewart thereon for that position. John H. Evans had been nominated as a Progressive candidate for

the State Senate; but he resigned his nomination, and thus created a vacancy for that place on the Progressive Party ticket. Certain voters made a certificate and filed it with the clerk of the circuit court nominating Marshall for the Senate on that ticket. Then other voters made a certificate nominating Stewart for the Senate on that ticket. Both certificates were filed with the clerk on the same day, the Marshall certificate first by some hours, and probably fully signed before the Stewart certificate. The ballot commissioners decided this contest by determining to place Marshall's name on the Progressive ticket.

It is urged against the right of Marshall to go on the Progressive ticket that the certificate of his nomination is defective and void. One defect is that the device or emblem and legend adopted by the Progressive Party are wanting, it containing no device or legend as required. Code of 1906, ch. 3, sec. 23 Another defect is the failure of the certificate to give the name of the party which said candidate is to represent. See ch. 3, Supplement Code of 1909, serial section 36. The Code, ch. 3, sec. 34, requires the state committee of every political party to adopt a device or emblem and requires that the election ballot sheets shall have separate columns for the candidates of each party, and the name of the party and its device or emblem to be printed in its column. This device should appear at the head of the party column, to indicate to the voter the ticket he wishes to vote. What the purpose of its presence in a certificate of nomination? To enable the board of ballot commissioners to put the candidate's name in his party column. Material provisions, I grant. But we must not require so literal or exact compliance with the election law as to defeat the right of voters to place their candidates before the people or vote for them. Section 24, providing the right of voters to nominate, gives the form of certificate, but says that it may be in that form or to its effect. The certificate in question has the head reading, "Certificate of Election. The Progressive Party." We conclude that this substantially performs the office of the device in indicating to the ballot commissioners the party column. The clerk's office contained the party device, and from it and otherwise they could safely locate the candidate on the sheet. Moreover, section 27 provides that if it shall appear to the clerk by "satisfactory evidence" that nominations have been made in conformity with the statute, and no certificate has been received, he shall include such nomination

among the candidates on the ballot. Surely under this section, with this certificate before them, and other infomation attainable, if needed, the commissioners of ballots could locate this candidate on the ballot sheet in the proper column. And besides, the commissioners did determine to put Marshall's name on the Progressive ballot, and it is not alleged that they erred in locating Marshall on the ballot sheet.

There were two competing nominations before the ballot commissioners, those of Marshall and Stewart. Which shall be chosen? Some principle of decision must be applied, unless we can say that the decision of the ballot commissioners, even if we consider it erroneous, should be held final, (which I doubt). The Marshall certificate had been completely signed by voters first, and was filed with the clerk several hours on the same day before the Stewart certificate. We hold that when the Marshall certificate reached the clerk it took effect as the first nomination, as prior in time. It is an old maxim, *Qui prior est in tempore, prior est in jure;* he who is prior in time is prior in right. But it is argued against this holding that the law knows no fraction of a day. I answer that some times it does. When the case furnishes no other solution it does cut up the day. 1 Robinson's. Prac. 437; 38 Cyc. 314. There is found the text, "The rule that a day is an indivisible period of time is, however, a mere legal fiction, and subject to numerous exceptions. The courts will disregard the fiction, and take cognizance of the actual time of the happening of an event or the doing of an act, when the actual point of time is important, and inquiry in regard to it is essential in order that justice may be done, as where it is necessary to protect a completed act or save a vested right, or to determine the conflicting rights of rival claimants when they depend upon priority in fact." See the many notes in 8 Am. and Eng. Ency. Law 738. *Naylor* v. *Throckmorton,* 7 Leigh 98, holds that where several mortgages to secure different debts are made on the same day, one after another in quick succession, all recorded the same day in same order as was execution, that the mortgage first executed took preference. And in *Neal* v. *Utz,* 75 Va. 480, the question was whether a debt summons was served before a conviction on the same day of the defendant for felony, and it was. held that it could be proven that the service was first. These cases fractioned the day. It is suggested in the case before us that the Stewart certificate had the greater number of signers, and thus was preferential. So the other one had the

statutory number of names, it has legal effect. The greater number of names on the Stewart certificate added nothing to its force.

It is said in the petition that the certificate nominating Stewart was circulated for signature at the instance and with the approval of the chairmen of the senatorial district and county committees of the Progressive Party, and is therefore the true nomination.

The Progressive Party being a new party has not, as an old party participating in former elections, the full legal status of such old party. Its right to participate in the coming election, or present candidates by certificate, no one questions. But its committees have not legal status to perform functions themselves or by their chairmen under our election law. We are not aware that its committees have authority to authorize or refuse to authorize, nomination by voters; that is a function of voters under sec. 24, whether a committee does or does not approve. Hence the sanction by the chairmen of the senatorial and county committees added nothing to the legal force of the certificate nominating Stewart.

Another point made for the mandamus to displace Marshall from the Progressive ticket is, that he is a Republican and the regular nominee of the Republican Party for the Senate, and that the signers of his certificate of nomination are not members of the Progressive Party, but decided Republicans and Democrats. This is relied on to show that Marshall's nomination is fraudulent and ineffective. In the case decided a few days since of *Morris* v. *Ballot Commissioners* we held this position not good to invalidate the nomination, for reasons stated in the opinion in that case.

The plaintiff's petition alleges that Marshall and certain political friends and employer of Evans coerced him to sign a written resignation of his nomination. The things done constituting coercion are not stated in the petition. It is insufficient. Facts to show coercion in law are not shown. Evans on oath denies it. The fact, if true, might be an element to show fraud; but we regard that feature of the case not effectual.

It is suggested that under section 34 no two parties can adopt the same device; but these certificates of nomination made no pretence of forming a new party, but made only one nomination to fill a vacancy in the column of an existing party.

*Writ Denied.*