# Richmond

R. LEE CARNEY AND BEVERLEY WORRELL V. BESSIE
POINDEXTER.

April 28, 1938.

Present, All the Justices.

The opinion states the case.

*Beverley Worrell, R. Lee Carney* and *Lawson Worrell, Jr.,* for the plaintiffs in error.

*Hobart & Porter,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

The People's Service Drug Stores, Inc., caused the life of John Poindexter, one of its employees, to be insured in the sum of one thousand dollars in a group policy issued by the Equitable Life Assurance Society with Bessie Poindexter, the wife of the employee, as the named beneficiary.

Bessie Poindexter was indicted for killing her husband. While the case was pending, she employed two lawyers, R. Lee Carney and Beverley R. Worrell, to defend her and, in compensation for their services, she executed an assignment reading as follows:

"Know all men by these presents that I, Bessie Poindexter, of 405 5th Ave., N. E., Roanoke, Virginia, for and in consideration of Beverley R. Worrell and R. Lee

Carney, representing me in the case of Commonwealth v. Bessie Poindexter, do hereby sell, assign, transfer and set over, and by these presents do sell, assign, transfer and set over unto the said Beverley R. Worrell and R. Lee Carney, the policy of insurance known as policy No. 2870-6155 of the Equitable Life Assurance Society of the United States. Said policy is a group policy with and through the People's Drug Company; and all sum of money, interest, benefit and advantage whatsoever, now due, or hereafter to arise, or to be had, or made by virtue thereof.

"In addition to selling, assigning, transferring and setting over unto the said Beverley R. Worrell and R. Lee Carney, the undersigned does hereby authorize the aforementioned insurance company to pay over unto the said Beverley R. Worrell and R. Lee Carney any sum, or sums, now due, or hereafter to become due, on said policy, and the undersigned does hereby release, discharge and forever quit-claim unto the said insurance company any right, title or interest she may have in said insurance policy, upon the payment of the proceeds thereof, as hereinbefore set out, unto the said Beverley R. Worrell and R. Lee Carney.

"Witness the following signature and seal.

"BESSIE POINDEXTER (Seal)."

The lawyers defended her in the criminal trial and were instrumental in securing her acquittal. Thereafter she repudiated her contract with the attorneys and claimed that she was entitled to the proceeds of the policy on the life of her husband, notwithstanding the fact that she had assigned it.

R. Lee Carney and Beverley R. Worrell instituted this attachment proceeding against Bessie Poindexter, principal defendant, and the Equitable Life Assurance Society, co-defendant. The principal defendant failed to appear, answer, or plead to the petition in the attachment. The Equitable Life Assurance Society appeared, acknowl-

edged its liability on the policy, and paid one thousand and ten dollars, the full amount thereof, to the clerk, to be held by him subject to the order of the court in the proceeding. On February 1, 1937, judgment was rendered against the principal defendant, and the proceeds of the policy were ordered to be applied as a credit on the judgment. The clerk, pursuant to this order, paid the one thousand and ten dollars to the plaintiffs, who credited it on the judgment debt.

On February 25, 1937, more than fifteen days after the rendition of the judgment, the trial court, on motion of Bessie Poindexter and over the objection of R. Lee Carney and Beverley R. Worrell, vacated the judgment and reinstated the case on the active docket and compelled the judgment creditors to repay the one thousand and ten dollars to the clerk, subject to further orders of the court.

On final hearing the trial court held that the assignment of the policy was void, and that Bessie Poindexter was entitled to hold the proceeds of the policy "exempt from all legal and equitable claims, process or operation of law."

The first assignment of error challenges the power of a trial court to vacate a judgment after fifteen days from the date of rendition.

At common law, judgments did not become final until the end of the term, and the court had no power to direct an execution upon them during the term. These common law rules have been modified by statute. Code 1936, section 6134, provides that an office judgment, where no inquiry of damages is required, shall become final "on the adjournment of the next term (of court) or at the close of the fifteenth day thereof (whichever shall happen first)." If the proceedings are regular and there has been no waiver of plaintiff's rights, all proceedings taken in an action at law after an office judgment has become final, "are a nullity, or should be set aside, so as to give the plaintiff the benefit of the

final judgment in his favor." Burks' Pleading and Practice, 3d Ed., p. 111. See Code 1849, p. 652; *Pollard* v. *American Stone Co.*, 111 Va. 147, 68 S. E. 266; *Neale* v. *Utz*, 75 Va. 480; *Enders' Ex'rs* v. *Burch*, 15 Gratt. (56 Va.) 64; *McVeigh* v. *Bank*, 76 Va. 267; *Jones & Co.* v. *C. W. Hancock & Sons*, 117 Va. 511, 85 S. E. 460, 3 A. L. R. 126; *Stultz* v. *Pratt*, 103 Va. 536, 49 S. E. 654.

Code 1936, section 6500 (Code 1849, ch. 177, section 21, page 674), empowers trial courts to order executions to be issued on judgments during the term they are rendered, but the section contains no provision expressly declaring that judgments, on which executions are ordered to be issued, shall be final.

In *Baker* v. *Swineford*, 97 Va. 112, 33 S. E. 542, 543, the difference in the language of the two sections (6134 and 6500) was noted. Regarding the former section, this is said: " * * * it is expressly declared that they shall become final in the fifteenth day of the term, or on the last day of the term, whichever shall happen first; while section 3600" (now section 6500) "is silent as to the effect upon the judgment of the execution when issued. It might have said that, upon the issuing of the execution, the judgment should be final; it should have so said if that effect was intended to follow its issue.

    *     *     *     *     *     *     *

"We are of opinion that section 3600" (now section 6500) "of the Code was designed by the Legislature for the purpose, and has the effect, of conferring upon courts authority to direct executions to issue upon judgments under the conditions therein set forth; but that it was not intended and does not impart to such judgments the quality of finality so as to deprive the court during the term of the power to correct, or if need be, annul an erroneous judgment."

This was the settled law in this jurisdiction until 1926, when the General Assembly adopted chapter 458, Acts 1926, p. 750; Code, section 5962a. This act provides that

the judges of the trial courts may keep in continuous session any or all of the courts for the counties and cities until the last secular day preceding the ensuing term. It provides a form to be used and inscribed by the clerks in the order books at the beginning and close of terms of court. Many of the judges, pursuant to this act, permit the terms of court in the counties and corporations within their judicial circuit to continue until the last secular day preceding the beginning of the next term as fixed by law.

■ If no judgment or decree became final until the close of the term, plaintiffs would be unreasonably delayed in obtaining the benefit accruing to them from judgments or decrees in their favor. To avoid delays of this nature and other objections which might have arisen under the practice authorized by the act, the legislature adopted the following provision: "All judgments or decrees entered during any term of the court shall become final at the end of the term or at the expiration of fifteen days after their rendition, whichever period shall first happen."

This language is clear and explicit. It fixes with no uncertainty the time in which all judgments or decrees shall become final.

The trial judge seems to have based his authority to vacate the judgment and reopen the case on the ground that Code, section 4258j, entitles a named beneficiary to hold the proceeds of a group life insurance policy free from attachment, garnishment, or other legal process.

■ ■ Under the provisions of this statute, the proceeds of such a policy may be so held by the beneficiary, but the statute does not prohibit the beneficiary from disposing of the proceeds, after the death of the assured, as she pleases. It is conceded that after the death of the assured, Bessie Poindexter executed the written assignment of the policy in consideration of plaintiffs defending her in the criminal prosecution, and that they

were successful in this defense. Nothing to controvert these conceded facts was offered by her in the attachment proceedings until fifteen days after the judgment and the transfer of the proceeds to plaintiffs. The claim to hold the proceeds exempt, even if available to the beneficiary under the circumstances, was offered too late to be considered by the trial court.

For the reasons stated, the judgment of the trial court is reversed and the case remanded with directions to the trial court to reinstate the judgment of February 1, 1937.

*Reversed and remanded.*

GREGORY, J., concurring.