## WURTS & Another *v.* HOAGLAND & Others, Commissioners.

IN ERROR TO THE SUPREME COURT OF THE STATE OF NEW JERSEY.

Argued March 10, 1885.—Decided May 4, 1885.

The statute of New Jersey of March 8, 1871, providing for the drainage of any tract of low or marshy land within the State, upon proceedings instituted by at least five owners of separate lots of land included in the tract, and not objected to by the owners of the greater part of the tract, and for the assessment by commissioners, after notice and hearing, of the expenses upon all the owners, does not deprive them of their property without due process of law, nor deny to them the equal protection of the laws, within the meaning of the Fourteenth Amendment of the Constitution of the United States.

This was a writ of error by the devisees of Mary V. Wurts to reverse a judgment confirming an assessment of commissioners for the drainage of lands under the statute of New Jersey of March 8, 1871, the material provisions of which are as follows:

By § 1, "the Board of Managers of the Geological Survey, on the application of at least five owners of separate lots of land included in any tract of land in this State which is subject to overflow from freshets, or which is usually in a low, marshy, boggy or wet condition," are authorized to examine the tract, and, if they deem it for the interest of the public and of the land owners to be affected thereby, then to make surveys, and decide upon and adopt a system of drainage, and report it to the Supreme Court of the State; and thereupon the court, upon reasonable notice published in a newspaper circulating in the county where the tract is, shall appoint three commissioners to superintend and carry out the system of drainage so adopted and reported; "provided, that if, at the time fixed for such appointment of commissioners, it shall appear to the court by the written remonstrance of the owners of a majority of the said low and wet lands duly authenticated by affidavit, that they are opposed to the drainage thereof at the common expense, then the said court shall not appoint such commissioners."

By § 2, the commissioners shall cause the tract to be drained in accordance with the general plan of the board of managers, and, after the completion of the work, report to the Supreme Court the expense thereof, together with a general description of the lands which, in their judgment, ought to contribute to the expense; notice of the report shall be published for four weeks, in order that any persons interested may examine the report, and file objections to it; if any such objections are filed within the four weeks, the Supreme Court shall determine upon the same in a summary manner, and, without further notice, make an order directing the commissioners " to distribute and assess the amount of said expense and interest, upon the lands contained within the territory reported by them originally, or as corrected by the Supreme Court, in proportion, as near as they can judge, to the benefit derived from said drainage by

the several parcels of land to be assessed;" the assessment, when completed, shall be deposited in some convenient place for inspection by the parties interested, and notice of the completion of the assessment, and of the place where it is deposited, published for six weeks, designating a time and place when and where the commissioners will meet to hear objections to the assessment; and the commissioners, having heard and decided upon such objections as shall be made to them, shall proceed to complete their assessment and file it in the clerk's office of the Supreme Court, and notice of the filing shall be published for four weeks, after which, if no objections have been made to the assessment, it shall be confirmed by the court; any objections filed within the four weeks the Supreme Court shall hear and determine in a summary manner, but "shall not reverse said assessment or any part thereof, except for some error in law, or in the principles of assessment, made or committed by said commissioners;" if for any such cause the assessment or any part thereof shall be reversed, it shall be referred to the commissioners to be corrected accordingly, and, when it shall have been corrected and filed, like proceedings shall be had, until the court shall finally confirm the assessment; and thereupon the commissioners shall publish notice for four weeks, requiring the several owners or other parties interested in the lands assessed to pay their assessments.

By § 3, further provisions are made for collecting the assessment by demand on the owner of the lands assessed, and if he cannot be found, or neglects or refuses to pay, then by sale of his land for the least number of years that any person will take the same.

By § 5, the commissioners may from time to time borrow the necessary moneys to carry on the work of draining the lands, and give their bonds as such commissioners therefor, and pledge for the repayment thereof the assessment to be made as aforesaid.

By proceedings had in accordance with this statute, the Board of Managers of the Geological Survey, upon the application of more than five owners of separate lots of land situated in the tract of land known as the Great Meadows on the

Pequest River, examined and surveyed the entire tract, and reported a plan for draining it to the Supreme Court, and on November 15, 1872, three commissioners were appointed to carry the plan into execution.

Pending the proceedings, on March 19, 1874, a supplemental statute was passed, by § 2 of which, "if the said commissioners, after having commenced the drainage of such tract, and proceeded therewith, shall, before the drainage of the same shall be completed, be compelled to suspend the completion thereof, from any inability at that time to raise the money required therefor, they shall proceed to ascertain the tracts of land benefited or intended to be benefited by said drainage, and the relative proportions in which the said respective tracts have been or will be benefited thereby, and also the expenses already incurred in said drainage, and as near as may be the additional expenses required for the completion thereof," and make and report to the court an assessment of such expenses.

In accordance with that provision of the statute of 1874, the commissioners, before completing the work, made and reported to the court an assessment based upon an estimate of contemplated benefits, which was, for that reason, upon objections filed by Mrs. Wurts, set aside by an order of the Supreme Court, affirmed by the Court of Errors. 10 Vroom, 433; 12 Vroom, 175.

On May 17, 1879, after the completion of the work, the commissioners made a report to the court, pursuant to the statute of 1871, showing the expense to have been $107,916.07. No objections to that report having been filed after four weeks' notice, the court on June 23, ordered the commissioners to distribute that sum "upon the land mentioned in their said report, in proportion, as nearly as they can judge, to the benefit derived from said drainage by the several parcels of land to be assessed." The commissioners made an assessment accordingly, the proportion of which on the lands of Mrs. Wurts was $13,347.84, and, after notice to and hearing of all parties who desired to object to the assessment, reported it to the Supreme Court, which directed it to be modified as to certain lands of other parties lying outside the original survey, and in other

respects confirmed the assessment, notwithstanding objections made to it by the devisees of Mrs. Wurts; and its judgment was affirmed in the Court of Errors. 13 Vroom, 553; 14 Vroom, 456. The judgment of the Court of Errors was the final judgment in the case, and this writ of error was addressed to the Supreme Court because at the time of suing out the writ of error the record had been transmitted to that court and was in its possession. 105 U. S. 701.

The error assigned was that " the act of March 8, 1871, upon which the said judgment and proceedings are founded, violates the Constitution of the United States in this, that it deprives the plaintiffs in error of their property without due process of law, and denies to them the equal protection of the laws, and violates the first section of the Fourteenth Amendment to the Constitution of the United States."

*Mr. Samuel Dickson* and *Mr. J. G. Shipman* for plaintiffs in error.

*Mr. Theodore Little* for defendants in error.

Mr. Justice Gray, after making the foregoing statement of facts, delivered the opinion of the court.

General laws authorizing the drainage of tracts of swamp and low lands, by commissioners appointed upon proceedings instituted by some of the owners of the lands, and the assessment of the whole expense of the work upon all the lands within the tract in question, have long existed in the State of New Jersey, and have been sustained and acted on by her courts, under the Constitution of 1776, as well as under that of 1844. Stats. December 23, 1783, Wilson's Laws, 382; November 29, 1788, and November 24, 1792, Paterson's Laws, 84, 119; *Jones* v. *Lore*, Pennington, 1048; *Doremus* v. *Smith*, 1 Southard, 142; *Westcott* v. *Garrison*, 1 Halsted, 132; *State* v. *Frank & Guisbert Creek Co.*, 2 J. S. Green, 301; *State* v. *Newark*, 3 Dutcher, 185, 194; *Berdan* v. *Riser Drainage Co.* cited 3 C. E. Green, 69; *Coster* v. *Tide Water Co.*, 3 C. E. Green, 54, 68, 518, 531; *State* v. *Blake*, 6 Vroom, 208, and 7 Vroom, 442; *Hoagland* v. *Wurts*, 12 Vroom, 175, 179.

In *State* v. *Newark*, 3 Dutcher, 185, 194, the Supreme Court said: "Laws for the drainage or embanking of low grounds, and to provide for the expense, for the mere benefit of the proprietors, without reference to the public good, are to be classed, not under the taxing, but the police power of the government."

In *Coster* v. *Tide Water Co.*; 3 C. E. Green, 54, 518, the same view was strongly asserted in the Court of Chancery and in the Court of Errors. The point there decided was that a statute providing for the drainage of a large tract of land overflowed by tide water, by a corporation chartered for the purpose, none of the members of which owned any lands within the tract, if it could be maintained as an exercise of the right of eminent domain for a public use, yet could not authorize an assessment on the owners of such lands for anything beyond the benefits conferred upon them. But the case was clearly and sharply distinguished from the case of the drainage of lands for the exclusive benefit of the owners upon proceedings instituted by some of them.

Chancellor Zabriskie said: "But there is another branch of legislative power that may be appealed to, as authorizing the taking of the lands required for the works to drain these meadows. It is the power of the government to prescribe public regulations for the better and more economical management of property of persons whose property adjoins, or which, from some other reason, can be better managed and improved by some joint operation, such as the power of regulating the building of party walls; making and maintaining partition fences and ditches; constructing ditches and sewers for the draining of uplands or marshes, which can more advantageously be drained by a common sewer or ditch. This is a well-known legislative power, recognized and treated of by all jurisconsults and writers upon law through the civilized world; a branch of legislative power exercised by this State before and since the Revolution, and before and since the adoption of the present Constitution, and repeatedly recognized by our courts. The legislature has power to regulate these subjects, either by general law, or by particular laws for certain localities or particular and defined

tracts of land. When the Constitution vested the legislative power in the Senate and General Assembly, it conferred the power to make these public regulations as a well understood part of that legislative power." "The principle of them all is, to make an improvement common to all concerned, at the common expense of all. And to effect this object, the acts provide that the works to effect the drainage may be located on any part of the lands drained, paying the owner of the land thus occupied compensation for the damage by such use. So far private property is taken by them; farther it is not. In none of them is the owner divested of his fee, and in most there is no corporation in which it could be vested, and for all other purposes the title of the land remained in the owner. To effect such common drainage, power was in some cases given to continue these drains through adjacent lands not drained, upon compensation. All this was an ancient and well-known exercise of legislative power, and may well be considered as included in the grant of legislative power in the Constitution." 3 C. E. Green, 68–71.

Chief Justice Beasley, in delivering the judgment of the Court of Errors, enforced the same distinction, saying: "This case, with regard to the grounds on which it rests, is to be distinguished from that class of proceedings by which meadows and other lands are drained on the application of the land owners themselves. In the present instance, the State is the sole actor, and public necessity or convenience is the only justification of her intervention. But the regulations established by the legislative power, whereby the owners of meadow lands are compelled to submit to an equal burden of the expense incurred in their improvement, are rules of police of the same character as provisions concerning party walls and partition fences. To these cases, therefore, the principle upon which the decision of the present case rests is not to be extended." 3 C. E. Green, 531.

These full and explicit statements have been since treated by the courts of New Jersey as finally establishing the constitutionality of such statutes.

In *State* v. *Blake*, 6 Vroom, 208, and 7 Vroom, 442, a statute

authorizing a tract of swamps and marsh lands to be drained by commissioners elected by the owners of the lands, and the entire expense assessed upon all the owners, was held to be constitutional, although no appeal was given from the assessment. In the Supreme Court it was said: "This branch of legislative power which regulates the construction of ditches and secures the drainage of meadows and marshy lands has been exercised so long, and is so fully recognized, that it is now too late to call it in question. It is clearly affirmed in the *Tide Water Co.* v. *Coster*, and cannot be opened to discussion." 6 Vroom, 211. And the Court of Errors, in a unanimous judgment, approved this statement of the Supreme Court, as well as that of Chief Justice Beasley, in *Coster* v. *Tide Water Co.*, above quoted, 7 Vroom, 447, 448.

The constitutionality of the statute of 1871, under which the proceedings in the case at bar were had, was upheld by the Supreme Court and the Court of Errors upon the ground of the previous decisions. *In re Lower Chatham Drainage*, 6 Vroom, 497, 501; *In re Pequest River Drainage*, 10 Vroom, 433, 434; 12 Vroom, 175, 179; 13 Vroom, 553, 554, and 14 Vroom, 456. The further suggestion made by the Supreme Court in 6 Vroom, 501, 506, and 10 Vroom, 434, that this statute could be maintained as a taking of private property for a public use, was disapproved by the Court of Errors in 12 Vroom, 178.

In *Kean* v. *Driggs Drainage Co.*, 16 Vroom, 91, cited for the plaintiffs in error, the statute that was held unconstitutional created a private corporation with power to drain lands without the consent or application of any of the owners; and the Supreme Court observed that in the opinions of the Court of Errors in the present case and in *Coster* v. *Tide Water Co.*, the distinction was clearly drawn between meadow drainage for the exclusive benefit of the owners, to be done at their sole expense, and drainage undertaken by the public primarily as a matter of public concern, in which case the assessment upon land owners must be limited to benefits imparted. 16 Vroom, 94.

This review of the cases clearly shows that general laws for

the drainage of large tracts of swamps and low lands, upon proceedings instituted by some of the proprietors of the lands to compel all to contribute to the expense of their drainage, have been maintained by the courts of New Jersey (without reference to the power of taking private property for the public use under the right of eminent domain, or to the power of suppressing a nuisance dangerous to the public health) as a just and constitutional exercise of the power of the legislature to establish regulations by which adjoining lands, held by various owners in severalty, and in the improvement of which all have a common interest, but which, by reason of the peculiar natural condition of the whole tract, cannot be improved or enjoyed by any of them without the concurrence of all, may be reclaimed and made useful to all at their joint expense. The case comes within the principle upon which this court upheld the validity of general mill acts in *Head* v. *Amoskeag Manufacturing Co.*, 113 U. S. 9.

It is also well settled by the decisions of the courts of New Jersey that such proceedings are not within the provision of the Constitution of that State securing the right of trial by jury. New Jersey Constitution of 1776, art. 22 ; Constitution of 1844, art 1, sec. 7 ; *Scudder* v. *Trenton Delaware Falls Co.*, Saxton, 694, 721–725 ; *In re Lower Chatham Drainage*, 7 Vroom, 442 ; *Howe* v. *Plainfield*, 8 Vroom, 145.

The statute of 1871 is applicable to any tract of land within the State which is subject to overflow from freshets, or which is usually in low, marshy, boggy or wet condition. It is only upon the application of at least five owners of separate lots of land included in the tract, that a plan of drainage can be adopted. All persons interested have opportunity by public notice to object to the appointment of commissioners to execute that plan, and no commissioners can be appointed against the remonstrance of the owners of the greater part of the lands. All persons interested have also opportunity by public notice to be heard before the court on the commissioners' report of the expense of the work, and of the lands which in their judgment ought to contribute ; as well as before the commissioners, and, on any error in law or in the principles

of assessment, before the court, upon the amount of the assessment.

As the statute is applicable to all lands of the same kind, and as no person can be assessed under it for the expense of drainage without notice and opportunity to be heard, the plaintiffs in error have neither been denied the equal protection of the laws, nor been deprived of their property without due process of law, within the meaning of the Fourteenth Amendment of the Constitution of the United States. *Barbier* v. *Connolly*, 113 U. S. 27, 31; *Walker* v. *Sauvinet*, 92 U. S. 90; *Davidson* v. *New Orleans*, 96 U. S. 97; *Hagar* v. *Reclamation District*, 111 U. S. 701.

*Judgment affirmed.*