Traute *v.* White.

---

ANNIE M. TRAUTE et al.

*v.*

WILLIAM T. WHITE.

1. One of two adjoining owners of land in the city of Camden who erects a wall over the property line, under the ordinances of that city respecting party-walls, cannot claim the benefit of such wall as a party-wall, unless it be built of the width prescribed by the ordinance and also be solid and free from any openings.

*Quære.* Whether the ordinance in question is valid under the limitations of our constitution?

---

*Mr. Samuel K. Robbins,* for the complainants.

*Mr. John F. Harned,* for the defendant.

PITNEY, V. C.

The parties are owners of adjoining lots in the city of Cam-den. Complainants were in advance of the defendant in improv-ing their lot. They built a two-story dwelling on it, less in width than the lot, leaving an alley-way of about three feet next to defendant's lot. Some time afterwards the defendant pro-ceeded to build a dwelling on his lot and, for that purpose, took advantage of the ordinances of the city of Camden, authorizing and regulating party-walls, to place a wall, eight inches thick only, on the line between the lots, four inches on each side of it, and extended it full two stories high, besides the peak of the gable, which faced the adjoining lots. In the peak of the gable-overlooking complainants' house he placed a window. He also placed a cornice on it overhanging complainant's alley-way.

Complainants, by their bill, asked that the overhanging cor-nice be removed, and that the window be closed up. Defendant answered.

Just before the hearing, defendant removed the cornice, so that at the hearing the sole matter of contest was the overlooking window.

On the part of the defendant, it was insisted that no case was made for the action of the court, for the reason that no damages were shown, and that by the well-settled rule in this state, as laid down in *Hayden* v. *Dutcher, 4 Stew. Eq. 217,* an easement of light and air cannot be acquired by adverse user in this state.

Complainants, in reply, insisted that if defendant's wall was a party-wall, he had no right to leave any opening in it, and that, whether it was a party-wall or not, if he enjoyed it, in its pres-ent position, with the opening, for twenty years, he would acquire a right so to continue to enjoy it, so far as it rested on com-plainants' land, in that condition, as an easement in complain-ants' land. In support of his first point he cited *Vollmer's Ap-peal, 61 Pa. St. 118,* in which Judge Read, after an elaborate review of the course of legislation and decision in that state on the subject, says (*p. 128*): "From this review of the doctrines applicable to party-walls, it is clear that it must be a solid wall (without openings), of brick or stone, or other incombustible

material. This is required by the policy as well as the letter of the law."

Without stopping to examine the legislation of Pennsylvania on which this decision is founded, and quite independent of it, I am of the opinion that solidity and freedom from openings is of the very essence of the notion of a party-wall. Its object is to give each party the right and opportunity to use it as a wall, and, so far as there is an opening in it, it is not a wall, and the use of it as such by the adjoining owner is restricted by just so much. If the party building a party-wall may put in it one window he may put in more and make them of such size as to render the thing useless to his neighbor. This view is sustained by the case of *Sullivan* v. *Graffort, 35 Iowa 531.* There the wall was built under circumstances precisely similar to those of the case in hand. It was built without openings. The statute of Iowa is silent as to openings in party-walls. Defendants threatened to make openings and put in windows overlooking complainant's lot. The court enjoined them, on the ground that a party-wall must be solid.

If, then, defendant desires at any time hereafter, for any purpose, to claim this wall to be a party wall, he must make it a solid wall, and a decree must be made that, unless he do so within a day to be fixed, he and his heirs and assigns, owners and occupants of his lot, shall be forever debarred and enjoined from claiming it to be a party-wall for any purpose or at any time as against complainants, their heirs and assigns, owners and occupants of their lot.

The clause in the charter of Camden authorizing municipal legislation on this subject, provides that no party-wall shall be less than nine inches thick. The proof shows this wall to be only eight inches thick. It is not necessary now to decide whether defendant can, under any circumstances, claim the benefit of this wall built of that thickness as a party-wall. It is proper, however, to say, that where the owner of lot A sees that his neighbor, owner of lot B, has made such permanent improvements in the shape of buildings on lot B, as shows a manifest intention on his part not to build up to the line between

the two properties, and yet, without any agreement with him, proceeds to erect a wall with its centre on the line between lots A and B, under the statute and ordinance authorizing him to make such use of lot B, it stands the owner of lot A in hand to be careful that he has complied in every particular with the letter and spirit of the law. If he fails in any particular, he is liable, in the language of Chief-Justice Thompson, of Pennsylvania, cited in *Vollmer's Appeal,* "to become a trespasser and a wrong-doer."

And, I think it proper to say further, that, but for the express *dictum* of Chancellor Green, in *Hunt* v. *Ambruster, 2 C. E. Gr. 208,* I should have thought an act or ordinance authorizing a party to build a wall on his neighbor's land to be simply not legislation, but usurpation. I confess it is not forbidden by any clause in the constitution, and I have always supposed it was not thought to be necessary by the framers of that instrument to insert in it a clause forbidding the taking of private property for *private* use, either with or without compensation, and that legislation in that direction was, in the absence of express constitutional authority, beyond the law-making power. And it seems to me, that where my neighbor takes exclusive possession and occupation of my land by covering it with a solid wall of masonry, many feet high, he "*takes*" it from me in the most thorough and effective manner, although the legal title remains in me. I do not understand that the legal title is at all involved in an unlawful "*taking*" of land, but that it is a question rather of practical dominion over, and the right to use it at the owner's free will and pleasure, so that he do not injure his neighbor or the public. When and so far as the owner is prevented from exercising such dominion over his land, it is "*taken*" from him. Nor do I understand such taking can be authorized by any supposed benefit to result to the owner. Especially is this true, in the case of a party-wall, where the realization of the supposed benefit depends entirely upon the manner in which the owner to be benefited may desire to enjoy his lot. If he shall never desire to build on that part of his lot, a party-wall will never be of any benefit to him ; or even if he shall desire to build up to his

line, the party-wall may be entirely unsuited in thickness and material for the structure he proposes to erect, and so be a positive injury rather than a benefit to him.

There is a clear distinction and no necessary connection between legislative regulation of the *size* and *character* of the walls of buildings in crowded cities, and legislative authority to one man to build a wall on his neighbor's land with the view of conferring a benefit upon him. The former is justifiable and proper as a police regulation, to prevent the spread of fire, and to guard against the danger of falling buildings, and that, I understand, the history of the legislation in regard to party-walls shows to be its origin.

But the question whether or not two adjoining owners shall erect and own and enjoy a wall in common between them or shall each erect his own wall on his own land and enjoy it as he does his other property, concerns those adjoining owners only, and in it the public has no interest whatever.

Legislation, regulating and authorizing party-walls, was had in Pennsylvania as early as 1721 and became imbedded in its colonial system, and was a part of it when it became a state and adopted a written constitution, and, on this ground, it may be that such legislation can be justified in that state. Upon similar grounds legislation authorizing the compulsory drainage of meadows is justified in New Jersey. *Hoagland* v. *Wurts, 12 Vr. 175*, in court of errors; *13 Vr. 553, 14 Vr. 456, 114 U. S. 606; Brittin* v. *Blake, 7 Vr. 442*. But an examination of these authorities, especially the opinion of Chief-Justice Beasley in *12 Vr.*, shows that but for the sanction of ancient usage that sort of legislation could not be supported. At *p. 177–8*, he says: "The position assumed was, that the legislature could not authorize this kind of improvement to be made at the expense, in part, of a land-owner who did not agree to the enterprise. If the law in question were defensible alone on the ground that it is an emanation of the legislative power in its ordinary exercise, I should be constrained to yield my assent to this contention. There is nothing that I know of in the nature of legislation that could stand as a warrant for such an enactment. To make this

evident, all we have to do is to realize fully the character of the authority thus assumed. The purpose of the law is to enable one set of land-owners to compel another set to co-operate, against their will, to drain that body of meadow-land in which they have separate interests. The persons thus coerced manifestly suffer an invasion of their ordinary proprietary rights. Why should they thus be forced either to improve their own land or help to improve the land of others ?    *    *    *

" Nor is such an exercise of power any more justifiable, if it is to be derived merely from the nature of the legislative authority, than would be an enactment [mark the language] *commanding A and B to farm their several lands at their joint expense.* And yet no one will pretend that this can be done. Under a constitution that guarantees the inviolability of private property, and limits the law-making power to the function of legislation, it appears to me entirely inadmissible to claim that it is a legitimate use of the prerogative to legislate, to enact a law, such as the present one, requiring a few land-owners to improve their lands for their own profit, and at their own expense. I regard it as a clear infringement of the constitution, to take, by force of a statute, the money of a person from him, even though such money should, against his will, be used for his private benefit, in the improvement of his land. Such an act has nothing in common with respect to legal principles, with the condemnation of property for the uses of the community, and to the charging, to a limited extent, of the costs of such improvement upon the land-owners specially benefited. I cannot assent to the hypothesis, that this law can rest on the state's right to tax, or on its eminent domain."

This reasoning seems to me to include party-walls and in effect to overrule *Hunt* v. *Ambruster;* and see *Scudder* v. *Trenton Delaware Falls Co., Sax. 694, 726,* and *Coster* v. *Tide Water Co., 3 C. E. Gr. 54; S. C., on appeal, 3 C. E. Gr. 518*

I have said so much, as a protest simply, against the doctrine of *Hunt* v. *Ambruster.*