ORR v. ALLEN et al.

(District Court, S. D. Ohio, W. D. August 9, 1917.)

No. 134.

1. TAXATION ⬦24—POWER OF STATE—PURPOSES—LOCAL IMPROVEMENTS.

A state may require local improvements to be made, which are essential to the health, comfort, safety, and prosperity of the community, and may prescribe the way in which the means to meet the cost of the improvement shall be raised, whether by general taxation or by laying the burden upon the district specially benefited; the power of the state respecting the mode, form, and extent of taxation being unlimited, unless restrained by the federal Constitution, where the subjects to which it applies are within the state's jurisdiction.

2. DRAINS ⬦67—EMINENT DOMAIN ⬦31—ASSESSMENTS—PUBLIC PURPOSES.

. Under the Ohio Conservancy Act (104 Ohio Laws, p. 13), authorizing the creation of conservancy districts for the purpose of preventing floods and protecting cities, villages, farms, and highways from inundation, the land to be taken and the assessments to be made for such an improvement are for a highly important public service and use.

3. STATUTES ⬦64(5)—PARTIAL INVALIDITY—PUBLIC IMPROVEMENTS.

Ohio Conservancy Act, §§ 53, 54, so far as they provide for attorney's fees as a part of the cost in certain cases, and section 6, so far as it provides for an appeal from an order refusing to establish a conservancy district to the court of appeals of the county, being void under the decisions of the Supreme Court of Ohio, are to be regarded as separable from the rest of the act, and in effect eliminated from it.

4. COURTS ⬦366(2)—FEDERAL COURTS—AUTHORITY OF STATE DECISIONS.

Whatever views a state court may have expressed regarding the validity of a state statute under the federal Constitution, the courts of the United States must decide the question according to their own convictions.

5. CONSTITUTIONAL LAW ⬦290(1)—DUE PROCESS OF LAW—ASSESSMENTS FOR LOCAL IMPROVEMENTS.

To constitute due process of law, it is only required that the costs of a local public improvement be apportioned in a just and reasonable mode according to benefits.

6. CONSTITUTIONAL LAW ⬦290(1)—DUE PROCESS OF LAW—ASSESSMENTS FOR LOCAL IMPROVEMENTS.

To constitute due process of law, an assessment upon private property for the cost of a local improvement must be for a public use, whether for the whole state, or for some limited portion of the community; but it is not essential that the entire community, or even any considerable portion thereof, should directly enjoy or participate in the improvement, to constitute it a public use.

7. CONSTITUTIONAL LAW ⬦290(3)—DRAINS ⬦2(1)—DUE PROCESS OF LAW—PUBLIC IMPROVEMENTS—FLOOD PREVENTION.

The Ohio Conservancy Act, authorizing the establishment of conservancy districts to prevent floods, etc., affords due process of law, as it carefully provides notice to the landowner and a hearing upon every essential question of fact involving the necessity for the proceedings under the act, the propriety of establishing the conservancy district, the amount of the benefits to accrue, and the assessments therefor, and provides a mode and form of testing all of the landowner's rights in the ordinary course of justice before a court of competent jurisdiction.

8. CONSTITUTIONAL LAW ⬦232—EQUAL PROTECTION OF THE LAWS—PUBLIC IMPROVEMENTS—FLOOD PREVENTION.

Ohio Conservancy Act, § 6, authorizing any petitioner for the establishment of a conservancy district to appeal to the court of appeals of the

county from an order refusing to establish such district, and section 38, authorizing the board of directors of the district to appeal from any order in any proceeding thereunder not requiring the intervention of a jury, does not deny the equal protection of the laws, though no provision is made for appeals by objecting landowners, as the Supreme Court of Ohio has held that the provision of section 6 for an appeal is invalid, and section 38 necessarily falls with section 6, and the right of review by proceedings in error is open to objecting landowners equally with petitioners and the directors.

9. CONSTITUTIONAL LAW ⊙⊃290(3)—DUE PROCESS OF LAW—PUBLIC IMPROVEMENTS—FLOOD PREVENTION.

Ohio Conservancy Act, § 3, providing, relative to petitions for the organization of a conservancy district, that several similar petitions or duplicate copies of the same petition may be filed and regarded as one petition, and that all such petitions filed prior to the hearing shall be considered by the court as though filed with the first petition placed on file. does not, in connection with section 5, providing for notice of the pendency of the petition immediately after the filing of the first petition, deny due process of law, though a similar or duplicate copy of the main petition might be filed and considered at the hearing, without any notice of its filing being given, as the petitions would manifestly be all alike, or substantially alike, and notice of the pendency of the main petition is sufficient.

10. DRAINS ⊙⊃67—EMINENT DOMAIN ⊙⊃167(2)—ESTABLISHMENT OF DISTRICTS —ASSESSMENTS—STATUTORY PROVISIONS.

Ohio Conservancy Act, § 34, providing, relative to appeals from the award of compensation or damages or benefits, that the appeal shall be from the award, but from no other part of the decree, is not invalid: objectors being given an opportunity at an earlier stage of the proceeding of contesting the validity of the law and the propriety of establishing the district, and to prosecute error, if they so desire.

11. CONSTITUTIONAL LAW ⊙⊃42—DRAINS ⊙⊃40—RESTRAINING CONSTRUCTION —RIGHT TO COMPLAIN—"PERSON."

If, as claimed, Ohio Conservancy Act, § 12, authorizing "any person or persons" to object to the plan of improvement adopted by the directors of the conservancy district, denies the right to object to counties or cities against which assessments are made, in view of section 1, defining "person" as excluding counties, cities, or other political subdivisions, this does not authorize a property owner, against whom an assessment is made, and who also pays taxes in a city and a county subject to assessment, to enjoin the improvement, as he can recover for taxes illegally imposed, and will suffer no irreparable injury, and moreover, as he has a right to object. he is in no position to complain that the county or city is denied such right.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Person.]

12. CONSTITUTIONAL LAW ⊙⊃290(1)—DRAINS ⊙⊃67—ASSESSMENTS—STATUTORY PROVISIONS.

Ohio Conservancy Act, § 43, providing for a levy upon the property in a conservancy district of a tax not to exceed three-tenths of a mill on the assessed valuation for the purpose of paying preliminary expenses, does not violate Const. U. S. Amend. 14, but is a proper exercise of the power of taxation, both under the federal Constitution and the Constitution of Ohio.

13. COURTS ⊙⊃366(6)—FEDERAL COURTS—AUTHORITY OF STATE DECISIONS— "TAX"—"ASSESSMENT."

The decision of the Supreme Court of Ohio, that under the Conservancy Act, § 43, the word "tax" means "assessment," and is to be imposed with

⊙⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

reference to benefits and burdens upon real estate, must be followed by a federal court.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Assessment; Tax.]

14. DRAINS ☞67—ASSESSMENT OF BENEFITS—STATUTORY PROVISIONS.

Ohio Conservancy Act, § 46, providing that, when a landowner has paid the entire assessment in full upon an appraisement of benefits to his property, he may nevertheless be assessed for purposes of maintenance, and section 47, providing for additional levies as may be necessary to pay the principal and interest of bonds, are not open to any valid objection.

15. CONSTITUTIONAL LAW ☞46(3)—OBJECTIONS TO VALIDITY OF STATUTE—PREMATURE OBJECTION.

An objection to the validity of Ohio Conservancy Act, § 47, providing that a party who has not sought a remedy against any proceeding thereunder until after bonds have been sold or the work constructed cannot for any cause have an injunction against the collection of taxes or assessments for the payment of such bonds, is premature, when made in a suit for an injunction before the improvement has been constructed or the bonds sold.

In Equity. Suit by Louis H. Orr against Harry M. Allen and others. Interlocutory injunction denied.

Long, Bell & Smith, of Piqua, Ohio, for plaintiff.

Brown & Frank and McMahon & McMahon, all of Dayton, Ohio, for defendants.

Before WARRINGTON, Circuit Judge, and COCHRAN and HOLLISTER, District Judges.

HOLLISTER, District Judge. This action, brought by Louis H. Orr, a citizen of California, owner of real estate in the city of Piqua, Miami county, Ohio, and farming land in Miami county, against the defendants individually and as the board of directors of the Miami conservancy district, challenges the constitutionality, both with respect to the Constitution of Ohio and the Constitution of the United States, of the act of the General Assembly passed February 5, 1914, entitled, "To prevent floods, to protect cities, villages, farms and highways from inundation, and to authorize the organization of drainage and conservation districts," known by legislative direction as the "Conservancy Act of Ohio."[1]

The purpose of this legislation was to provide against and to prevent the recurrence of such a calamity as befell the inhabitants of the valley of the Great Miami river in March, 1913, growing out of an unprecedented flood in that river and its tributaries, resulting, not only in the loss of many lives and the destruction of property, but, by possible recurrence, threatening the well-being and prosperity of the inhabitants and owners of property in that valley for all time to come. The menace of future similar disaster was a cloud upon the health, happiness, and prosperity of one of the most thriving and promising sections of the state. So threatening was the situation that the General Assembly of Ohio gave expression to public sentiment, not only in the

[1] 104 Ohio Laws, 13–64.

enactment of the provisions of this law with its appropriate title, but by declaring: [2]

"This act is hereby declared to be an emergency law, necessary for the immediate preservation of the public health and safety. Such necessity exists by reason of the inadequacy of the present drainage system of the state to carry off unusual rainfalls in a proper and safe manner, as shown by the disastrous floods of March, 1913, which may occur again at any time in the near future with a like unfortunate result in loss of life and property. The existing laws of the state are not adequate to meet this emergency."

While it is true that knowledge of a recurrence of such a disaster resides only with Omniscience, yet the finite mind, with knowledge gained by experience and observation, is endowed with sufficient foresight to seek to prevent and to insure against, if possible, a similar calamity in the future. Whether such legislation is an exercise of police power, or was enacted under express constitutional authority, is not important, and we agree with Judge Wanamaker in what he says in that behalf; [3] for the amendment of the Constitution of Ohio adopted September 3, 1912, with seeming prescience declared: [4]

"Laws may be passed * * * to provide for the conservation of the natural resources of the state, including streams, lakes, submerged and swamp lands and the development and regulation of water power and the formation of drainage and conservation districts. * * *"

[1] That it is in the power of the state to require local improvements to be made which are essential to the health, comfort, safety and prosperity of the community is not open to doubt, and for such purpose provision may be made for many such objects, including draining marshy and malarious districts, irrigating arid lands, and the construction of levees to prevent inundations, and the Legislature may prescribe the way in which the means to meet the cost of the authorized improvement shall be raised, whether by general taxation or by laying the burden upon the district specially benefited. [5]

The power of the state, unless restrained by provisions of the Constitution of the United States, as to the mode, form, and extent of taxation imposed to meet the cost, is unlimited, where the subjects to which it applies are within the state's jurisdiction. [6]

While no state conservancy act exactly like this has been passed upon by the Supreme Court of the United States, yet its general features and the method of operation under it have received the sanction of that court, [7] and the existence of the power has been affirmed in decisions too numerous to cite, though the method of its exercise has

---

[2] Section 79.

[3] Miami County v. Dayton, 92 Ohio St. 215, 224, 110 N. E. 726.

[4] Article 2, § 36.

[5] Hagar v. Reclamation District, 111 U. S. 701, 704, 705, 4 Sup. Ct. 663, 28 L. Ed. 569; County of Mobile v. Kimball, 102 U. S. 691, 704, 26 L. Ed. 238.

[6] State Tax on Foreign-Held Bonds, 15 Wall. 300, 319, 21 L. Ed. 179.

[7] O'Neill v. Leamer, 239 U. S. 244, 36 Sup. Ct. 54, 60 L. Ed. 249; Houck v. Little River District, 239 U. S. 254, 36 Sup. Ct. 58, 60 L. Ed. 266; Wurts v. Hoagland, 114 U. S. 606, 5 Sup. Ct. 1086, 29 L. Ed. 229; Hagar v. Reclamation District, 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569.

sometimes been successfully questioned, as being in contravention of some provisions of the Constitution of the United States.

While the existence of the emergency, as declared by the General Assembly, is not conclusive,[8] and the act itself provides how that question of fact may be raised, yet the opinion of the representatives of the people of Ohio has great weight. The act has been construed, and its validity, except as to certain clauses hereinafter referred to, has been upheld by the Supreme Court of Ohio, both from the view of the Constitution of Ohio and of the Constitution of the United States.[9] This was an affirmation of the original finding by the court of common pleas that the improvement contemplated was a public necessity, and that public safety, health, convenience and welfare would be promoted by the organization of the conservancy district substantially as prayed for in the petition authorized by the act to be filed in that court. While the views of the General Assembly and the decision of the Supreme Court are not conclusive upon the courts of the United States on the question of the public character of the use to which private property is to be appropriated and assessments made for the cost of public works, yet state action on the subject is accorded the highest respect.[10]

[2] From what we have said, it clearly appears that we are of opinion that the land to be taken and the assessments for the cost of this improvement are for a highly important public service and use, and we are in entire accord with the views of the General Assembly and of the courts of Ohio on the subject, and also, on the general subject, with the views of the Supreme Court of Nebraska,[11] approved by the Supreme Court of the United States:[12]

"In our opinion it is too late in the day to contend that the irrigation of arid lands, the straightening and improvement of water courses, the building of levees and the draining of swamp and overflowed lands for the improvement of the health and comfort of the community, and the reclamation of waste places and the promotion of agriculture, are not all and every of them subjects of general and public concern, the promotion and regulation of which are among the most important of governmental powers, duties and functions."

And we see no difference in principle between legislation such as this and legislation prescribing a system for reclaiming swamp lands, when essential to the health and prosperity of a community and laying the burden of doing it upon districts and persons benefited, or for draining low and marshy lands, or for irrigating large tracts of arid land, or for taking lands for public highways, or for constructing levees along the banks of rivers to prevent inundations.[13] In fact and in law,

8 Miami County v. Dayton, 92 Ohio St. 215, 110 N. E. 726.

9 Miami County v. Dayton, 92 Ohio St. 215, 110 N. E. 726.

10 Fallbrook Irrigation Dist. v. Bradley, 164 U. S. 112, 160, 17 Sup. Ct. 56, 41 L. Ed. 369; O'Neill v. Leamer, 239 U. S. 244, 253, 36 Sup. Ct. 54, 60 L. Ed. 249.

11 Neal v. Vansickle, 72 Neb. 105, 100 N. W. 200; Drainage District v. Richardson County, 86 Neb. 355, 125 N. W. 796.

12 O'Neill v. Leamer, 239 U. S. 244, 252, 253, 36 Sup. Ct. 54, 60 L. Ed. 249.

13 Hagar v. Reclamation Dist., 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569;

every substantial feature of this act as it is now before this court, so far as questions arising under the Constitution of the United States are concerned, has received the sanction of the Supreme Court of the United States in the cases referred to in the margin.

We have been content with referring to the volume of the Ohio Laws in which the act may be found, because its great length forbids detailed statement. A brief statement of the act and the parts particularly objected to may be made:

The court of common pleas of any county is authorized to establish conservancy districts for the purpose of preventing floods; of regulating streams and channels by changing, widening and deepening same; of reclaiming or of filling wet and overflowed lands; of providing for irrigation where it may be needed; of regulating the flow of streams; of diverting, straightening, widening, deepening and changing water courses; to build reservoirs, canals, levees, walls, embankments, bridges or dams, and to maintain, operate and repair any such construction; and to do all things necessary for the fulfillment of the purposes of the act. Before doing so, a petition shall be filed in the office of the clerk, signed either by 500 freeholders, or a majority of the freeholders, or by owners of more than half of the property in size, acreage or value within the limits of the territory to be organized into the district, and which petition may be signed by the governing body of any corporation within, or partly within, the proposed district, or by any city, or cities interested, in some degree, in the improvement. The petition shall contain, among other things, the statement of the necessity of the proposed work, and that it will be conducive to the public health, safety, convenience or welfare. Notice of the pendency of the petition and of the time and place of the hearing shall be given by publication and answers may be filed by objectors, and, when at issue, the case shall be advanced for hearing.

If the court is of opinion that the purposes of the act would be subserved by creating a conservancy district, the court shall, after disposing of all objections as justice and equity require by its recorded findings and adjudication of all questions of jurisdiction, declare the district organized and give it a corporate name. The court shall thereupon appoint three directors, whose duty it is to formulate a plan, including maps, profiles, etc., so as to describe the work, furnish an estimate of cost, with specifications, and designate what land is to be taken. They must report what lands will be benefited. The plan is open to inspection, and a hearing is provided for upon notice given in each county. Upon the hearing the directors shall adopt the plan, if no valid objections appear. After its adoption any person may object and be heard by the court, which may adopt, reject, or refer the plan back for further action.

Wurts v. Hoagland, 114 U. S. 606, 5 Sup. Ct. 1086, 29 L. Ed. 229; Fallbrook Irrigation Dist. v. Bradley, 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369; Goodrich v. Detroit, 184 U. S. 432, 22 Sup. Ct. 397, 46 L. Ed. 627; O'Neill v. Learner, 239 U. S. 244, 36 Sup. Ct. 54, 60 L. Ed. 249; Houck v. Little River District, 239 U. S. 254, 36 Sup. Ct. 58, 60 L. Ed. 266.

After the adoption of a plan, three appraisers, recommended by the directors, are to be appointed by the court, who shall value the land or other property to be acquired and appraise all benefits that may accrue to land by reason of the improvement. Appropriate hearings are provided for objections by any person or persons; counties, cities, villages and townships may be assessed as corporate bodies, and the assessments against them are to be collected and paid by general levy upon all the taxable property in the political subdivision as any ordinary debt. An appraisal record must be kept and show action of the appraisers and the amounts of damages awarded to each landowner whose property is appropriated and amounts assessed against each property benefited. Any person dissatisfied with the award of damages or the assessment of benefits may appeal to the court, and, upon an unsatisfactory finding, he may appeal to the court of common pleas of the county in which his land is situated. If the question of damages is involved, the directors shall file proceedings in condemnation, or, if the assessment for benefits is resisted, an inquiry into benefits in the county in which the land is situated, and the landowner is entitled to have those questions determined by a jury in his own county.

The land is not subject to a lien for the assessment until the owner's appeal has been determined and a certificate filed in the auditor's office, and the bonds to be issued are not a lien upon the land in the district, but upon the assessment as finally made and established. In the event that benefits are less than the costs, the court may reject the plan, or refer it back to the directors. Provision is made for the constitution of the court.

Before taking up the particular parts of the act claimed to be unconstitutional in themselves, as well as affecting the constitutionality of the entire act, it may be well to clear the way by disposing of some preliminary considerations:

1. Defendants' claim of want of jurisdiction on the ground that the amount involved is not sufficient to confer jurisdiction: Upon complainant's property in the city of Piqua, assessed for taxation at $49,850, the bill alleges that defendants have caused an appraisal of benefits to be made amounting to $2,988. Complainant says he owns farming property in Miami county assessed for taxation at $17,490, and that defendants have caused an appraisal of benefits to the county of $59,406, of which complainant's farming property must sustain its proportionate share. He does not set out what that share is. He alleges that the defendants have caused an appraisal of benefits to be certified against the city of Piqua in the sum of $324,500, of which his property must bear its proportionate share, amounting to $876.15, and that the item of three-tenths of a mill provided for in section 43 of the act upon his property in Miami county will amount to $20.20. These make a total of $3,864.15, together with such proportionate share his land may have to bear to the total amount assessed against Miami county. The defendants say that the assessment, when finally made, will not mount to over $1,500. It would seem that the bill of complaint shows a sufficient jurisdictional amount, and it is not denied that the apprais-

als as made by the appraisers of complainant's real estate in Piqua and the assessments made against the city of Piqua are as stated. We shall assume for the purposes of this case that the amount in controversy is sufficient to confer jurisdiction.

2. The defendants, while not denying that the appraisements are as stated, yet aver that the action is premature, in that under the provisions of the act the complainant, the city of Piqua, and Miami county can appeal to the court of common pleas from the decision of the appraisers; that their appeal is now pending, and that the court was, at the time this case was heard, engaged in hearing such appeals. Since the bill of complaint attacks the constitutionality of the whole act as against provisions of the Constitution of the United States, as, under the guise of taxation, assessing lands for other than a public use, and as everything done under the act would be futile if that contention prevails, and since the reports of the appraisers are good until set aside, we shall assume for the purposes of this case that this action has not been prematurely brought.

3. We shall also assume, upon the statement of counsel for the defendants at the trial that the averment in their answer that causes of action are improperly joined, and, if properly joined, there is a defect of parties defendant, is withdrawn, and is not open for consideration here.

[3] 4. Provisions, such as part of section 53 and part of section 54, for attorney's fees as a part of the cost in certain cases, the Supreme Court of Ohio condemned long before the act was passed,[14] and held since that the part of section 6 providing for appeal from an order refusing to establish the conservancy district to the court of appeals of the county is void, because repugnant to section 6, article 4, of the Constitution of Ohio of 1912.[15] But in all other respects that court has established the validity of the act with respect to the Constitution of Ohio, and also found the act not to be repugnant to the Constitution of the United States.[16] These parts of those sections having thus been declared to be repugnant to the Constitution of Ohio, they are to be regarded as separable from the rest of the act, and in effect as eliminated from it. As thus construed, therefore, the act stands established in its relation to the state Constitution.

[4] Required, as we are, to follow the decisions of a court of last resort in a state upon the construction of legislation of the state and its validity with respect to the Constitution of the State,[17] we hold the act as it now stands to be in conformity with the Constitution of Ohio, and now discuss it in its relation to the Constitution of the United States; for, whatever views the state court may have expressed on that subject,

[14] Coal Co. v. Rosser, 53 Ohio St. 12, 41 N. E. 263, 53 Am. St. Rep. 622.

[15] Snyder v. Deeds, 91 Ohio St. 407, 110 N. E. 1068.

[16] Miami County v. Dayton, 92 Ohio St. 212, 110 N. E. 726.

[17] Hagar v. Reclamation District, 111 U. S. 701, 704, 4 Sup. Ct. 663, 28 L. Ed. 569; Irrigation District v. Bradley, 164 U. S. 112, 154, 17 Sup. Ct. 56, 41 L. Ed. 369, and numerous cases. This is elementary. Sioux City, etc., Co. v. Trust Co., 173 U. S. 99, 111, 19 Sup. Ct. 341, 43 L. Ed. 628.

the courts of the United States must decide according to their own convictions.[18]

The claim, as we understand it, is that the act is in contravention of the Fourteenth Amendment of the Constitution of the United States, in that it is a taking of private property without due process of law, and that it denies the complainant the equal protection of the laws.

[5, 6] We have said, speaking generally of this act, that it was within the power of the state, for the purposes contemplated, to carry out a project such as this by appropriate legislation, to charge the cost against the property specially benefited, and to make that charge a lien upon the assessments for benefits. It is only required that the costs be apportioned in a just and reasonable mode according to benefits.[19] Respect must be had to the cause and object of the taking of private property. If palpably arbitrary and a plain abuse, oppressive and unjust, it may be declared to be not due process of law.[20] The assessment upon private property must be for a public use, whether it be for the whole state or some limited portion of the community.[21] And it is not essential that the entire community, or even any considerable portion thereof, should directly enjoy or participate in an improvement in order to constitute a public use.[22]

[7] We regard the public nature of this legislation completely established under the decisions of the Supreme Court of the United States in analogous cases; but, were it not so, we would think, and now declare, that the public character of this act and benefits to accrue under the proceedings taken by virtue of it cannot be doubted. Such legislation is not arbitrary nor unjust to the individual, for his absolute right as owner of land must yield to a certain extent or be modified by corresponding rights of other owners, for what is declared upon the whole to be for the public use.[23] The act shows great care in providing notice to the landowner and a hearing upon every essential question of fact involving the necessity for the proceedings under the act, the propriety of establishing a conservancy district, the amount of the benefits to accrue to each parcel of land or governmental subdivision, and the assessment therefor. The law provides a mode and form of testing all of the landowner's rights in the ordinary course of justice before a court of competent jurisdiction. Respect is had to the cause and object of the assessment. The statute is applicable to all lands of the same general character. All the landowners in the district have,

18 Irrigation District v. Bradley, 164 U. S. 112, 159, 17 Sup. Ct. 56, 41 L. Ed. 369.

19 Hagar v. Reclamation District, 111 U. S. 701, 705, 4 Sup. Ct. 663, 28 L. Ed. 569.

20 Davidson v. New Orleans, 96 U. S. 97, 104, 24 L. Ed. 616; Houck v. Little River District, 239 U. S. 254, 262, 36 Sup. Ct. 58, 60 L. Ed. 266, and cases cited.

21 Davidson v. New Orleans, 96 U. S. 97, 24 L. Ed. 616; Fallbrook Irrigation District v. Bradley, 164 U. S. 112, 157, 158, 17 Sup. Ct. 56, 41 L. Ed. 369.

22 Irrigation District v. Bradley, 164 U. S. 112, 162, 17 Sup. Ct. 56, 41 L. Ed. 369.

23 Fallbrook Irrigation District v. Bradley, 164 U. S. 112, 163, 17 Sup. Ct. 56, 41 L. Ed. 369.

to a certain extent, a common interest. The improvement cannot be accomplished without the concurrence of all, or nearly all, and the improvement is made useful to all at their joint expense. This is due process of law.[24]

We consider now the objections made to specific clauses claimed to be in contravention of the Fourteenth Amendment.

[8] 1. Section 6 provides for filing objections, on or before the date set for the hearing of the cause, by any owner of real property in the proposed district who has not signed a petition and who wishes to object to the organization and incorporation of the district, and further:

"If the court finds that the property set out in said petition should not be incorporated into a district, it shall dismiss said proceeding and adjudge the costs against the signers of the petition, in the proportion of the interest represented by them. Any petitioner may, within twenty days after the refusal, appeal from an order refusing to establish such district, to the court of appeals of said county, upon giving bond in a sum to be fixed by the court.

"After an order is entered establishing the district, such order shall be deemed final and binding upon the real property within the district and shall finally and conclusively establish the regular organization of the said district against all persons except the state of Ohio upon suit commenced by the Attorney General."

It is provided in section 38, among other things:

"The board of directors of any district organized under the terms of this act shall have the right to appeal from any order of the court of common pleas made in any proceeding under this act, not requiring the intervention of a jury."

The constitutional defect claimed in these provisions is that complainant is denied the equal protection of the laws, in that appeals by the petitioner, or the directors, as the case may be, are provided for, while no provision is made for appeals by an objector. This is not a question for our consideration, for the Supreme Court of Ohio has decided [25] that the portion of the sixth section which provides for appeal by petitioners from an order refusing to establish the district to the court of appeals of the county, upon giving bond, is repugnant to section 6, article 4, of the Constitution of Ohio of 1912. Necessarily the part of section 38 referred to falls within the condemnation of that part of section 6. That court also said [26] that, since the appeal clause in the act was unconstitutional, section 12247, Gen. Code Ohio, providing for reversals of judgments or final orders of the common pleas, for error appearing upon the record, was sufficient authority and was broad enough, under section 6, article 4, of the Constitution of Ohio of

[24] Davidson v. New Orleans, 96 U. S. 97, 104, 24 L. Ed. 616; Hagar v. Reclamation District, 111 U. S. 701, 710, 4 Sup. Ct. 663, 28 L. Ed. 569; Kelly v. Pittsburgh, 104 U. S. 78, 26 L. Ed. 658; Wurts v. Hoagland, 114 U. S. 606, 615, 5 Sup. Ct. 1086, 29 L. Ed. 229; Winona, etc., Land Co. v. Minnesota, 159 U. S. 526, 537, 16 Sup. Ct. 83, 40 L. Ed. 247; Fallbrook Irrigation District v. Bradley, 164 U. S. 112, 157, 158, 17 Sup. Ct. 56, 41 L. Ed. 369; Goodrich v. Detroit, 184 U. S. 432, 434, 22 Sup. Ct. 397, 46 L. Ed. 627; Houck v. Little River District, 239 U. S. 254, 262, 36 Sup. Ct. 58, 60 L. Ed. 266.

[25] Snyder v. Deeds, 91 Ohio St. 407, 110 N. E. 1068.

[26] Miami County v. City of Dayton, 92 Ohio St. 215, 218, 110 N. E. 726.

1912, to cover proceedings in error from decisions of the common pleas under the provisions of the conservancy act.

The result is that the clause in section 6, and necessarily that part of section 38 complained of, are of no more force than if they had never been enacted, and the right to proceed by error is open either to the petitioners or to the objectors. The objectors are not, therefore, denied the equal protection of the laws, and complainant's claim in that behalf is without foundation.

[9] 2. It is claimed that the fourth paragraph of section 3 of the act permits the taking of complainant's property without due process of law. Section 3 provides for the filing of a petition signed by 500 freeholders, etc., as hereinbefore stated, and—

"Several similar petitions or duplicate copies of the same petition for the organization of the same district may be filed and shall together be regarded as one petition. All such petitions filed prior to the hearing on said petition shall be considered by the court the same as though filed with the first petition placed on file."

Without discussing the reasons urged by complainant why this clause is fatal in itself and to the entire act, it is sufficient to say that what was contemplated by section 3 was evidently that, since it would obviously be important to obtain as many signatures to the main petition as possible, duplicates of the petition or similar petitions might also be filed and should be heard together as if they were one, and all of them filed prior to the hearing on the main petition should be considered the same as though filed when it was.

And section 5 provides that immediately after the filing of such petition (the main petition) notice shall be given, in the way and form provided, of its pendency and the time and place of hearing. Manifestly, the petitions are all alike, or substantially alike, and must set forth, among other things provided, a general description of the purposes of the contemplated improvement and what territory is to be included in the proposed district. It is true that a similar or duplicate copy of the main petition might be filed, say, the day before the hearing on the main petition, and no specific notice will be given on such a petition of its pendency, or the time and place of hearing thereon; but notice of the pendency of the main petition, and the time and place of its hearing, is notice to every landowner within the proposed district of the proceedings to include his land. It would make no difference whether he had notice on other petitions filed after notice on the main petition was given or not, for there can be no doubt that he had constructive notice when publication was made on the main petition, of its pendency and the time and place of hearing. Complainant's contention in this behalf is without merit.

[10] 3. The claim that section 34 of the act, second paragraph, providing:

"The appeal shall be from the award of compensation or damages or benefits, or one or more of them, but from no other part of the decree of the court"

—infringes some (not specified) constitutional right of complainant, has no foundation. Inasmuch as the objector has, as already shown,

the opportunity of contesting the validity of the law by hearing in the common pleas on the questions of public purpose and benefit of the act and the propriety of establishing the district, and may prosecute error if he desires, there seems to be no reason why he should have a further appeal on that subject when the award of damages or benefits, as the case may be, is made. He is given an appeal from such award, and may have a jury to determine those questions. This is a complete answer to complainant's contention.

[11] 4. The third paragraph of section 12 is complained of as being a denial of the equal protection of the laws in the provision that, if "any person or persons object" to the official plan, such person or persons may file their objections, for which a day for hearing before the court must be fixed, and the court shall hear the objections, and adopt, reject, or refer back the plan to the board of directors. The point is sought to be made that in the first section of the act it is said that the term "person," when not otherwise specified, shall mean person, firm, copartnership, association, or corporation other than county, township, city, village, or other political subdivision, and the right of objection is therefore denied all others except a person or persons.

Passing the fact that plaintiff in error in the case in 92 Ohio St. 215, 110 N. E. 726, hereinbefore referred to, was the county of Miami, in which case the validity of the act was sustained, showing that practically, at least, the county of Miami could and did prosecute error, if it thought, as it did, itself aggrieved, it is only necessary to say in disposing of this objection that the remedy of injunction in equity is extended only to one who may be injured if the remedy is withheld. Even if it were true (and we do not intend so to decide) that counties, townships, cities, and villages could not prosecute error, yet the complainant can do so. He can show no irreparable injury, for at law he can recover for taxes illegally imposed. The Supreme Court of the United States have declared it to be settled that, although a law may be unconstitutional, a party is not entitled to relief by injunction against proceedings in compliance therewith, unless it appears he has no adequate remedy by the ordinary processes of the law, or that the case falls under some recognized head of equity jurisdiction. Inadequacy of remedy at law exists, they say, where the case made demands preventive relief, as, for instance, the prevention of multiplicity of suits or the prevention of irreparable injury.[27] Moreover, the complainant, at least, is amply protected under the act itself, and he is in no position to complain if somebody else is denied relief. Injunction will not issue at the instance of a complainant who will suffer no injury by the acts complained of.[28]

[27] Cruickshank v. Bidwell, 176 U. S. 73, 80, 81, 20 Sup. Ct. 280, 44 L. Ed. 377, and cases cited.

[28] Tyler v. Judges, 179 U. S. 405, 21 Sup. Ct. 206, 45 L. Ed. 252; Cincinnati v. Dexter, 55 Ohio St. 93, 113, 44 N. E. 520; Goodrich v. Moore, 2 Minn. 61, 64 (Gil. 49), 72 Am. Dec. 74; Adler v. Railway Co., 138 N. Y. 173, 180, 33 N. E. 935; Bigelow v. Bridge Co., 14 Conn. 565, 580, 36 Am. Dec. 502.

[12] 5. The objection is made that section 43, third paragraph, providing for a levy upon the property in the district of a tax not to exceed three-tenths of a mill on the assessed valuation of the property for the purpose of paying the preliminary expenses, and if such expenses have already been paid in whole or in part from other sources they may be repaid from the receipts of the levy, is violative of the Fourteenth Amendment; but the basis of the claim does not appear. However, the straight levy of three-tenths of a mill on the real estate for the purposes indicated is a proper exercise of the power of taxation, both under the Constitution of Ohio [29] and under the Constitution of the United States.[30]

[13] 6. It is claimed that the word "property," in the third paragraph of section 43, necessarily means both real and personal property, and that personal property cannot be made the subject of an assessment for the purposes of such an act as this. We are not called on to determine the propriety of this contention, for the reason that the Supreme Court of Ohio,[31] construing the act, held that the word "tax," used in the act, was intended to be "assessment," as that is understood in Ohio when special and local improvements are contemplated, and that the assessment is to be made with reference to benefits and burdens upon real estate. If we were disposed to disagree, and we by no means intend to be so understood, we are required, nevertheless, to follow the state court in this construction.

[14] 7. We see no valid objection to that part of section 46 providing that, when a landowner has paid the entire assessment in full upon an appraisement of benefits to his property, he may nevertheless be assessed for purposes of maintenance, or that part of section 47 providing for additional levies as may be necessary to pay the principal and interest of bonds. In principle, this is the same as the three-tenths levy for preliminary expenses.

[15] 8. The objection to that part of section 47 which provides:

"A party who has not sought a remedy against any proceeding under this act until after bonds have been sold or the work constructed cannot for any cause have an injunction against the collection of taxes or assessments for the payment of said bonds"

—is premature. The work has not been constructed, nor the bonds sold. When they are, any one who has not sought a remedy against any proceeding under the act, and deeming himself injured, may then seek an injunction. The court could then determine whether or not, under the case made, an injunction should issue.

We have considered, also, the other objections made by complainant to the validity of the act, and are of opinion that they are without merit, and on the whole case we are satisfied that the interlocutory injunction sought by him should not be granted. It will therefore be denied, at complainant's costs.

[29] State ex rel. Franklin County Conservancy District v. Valentine, 94 Ohio St. 440, 114 N. E. 947.

[30] Houck v. Little River District, 239 U. S. 244, 254, 264, 265, 36 Sup. Ct. 58, 60 L. Ed. 266.

[31] Miami County v. Dayton, 92 Ohio St. 215, 110 N. E. 726.